# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 14, 2011        Decided July 17, 2012

No. 10-5037

NEWPORT AERONAUTICAL SALES,
APPELLANT

v.

DEPARTMENT OF THE AIR FORCE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cv-01283)

———

*Paul J. Seidman* argued the cause for appellant. With him on the briefs was *David J. Seidman*.

*W. Mark Nebeker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GARLAND, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The Air Force invoked Exemption 3 of the Freedom of Information Act (FOIA), which

covers information "specifically exempted from disclosure by statute," to deny Newport Aeronautical Sales' request for certain technical information concerning military equipment. We conclude that the information falls within the relevant nondisclosure statute, and that it is therefore exempt from disclosure under the Act.

I

Newport is a commercial data library that collects technical information, including documents, from the Air Force. For a fee, Newport then makes that information available to qualified U.S. contractors entitled to receive it. Gathering information is a big part of Newport's business, and FOIA requests are an important tool for obtaining that information.

FOIA requires executive branch agencies to make their records available "to any person" upon request, 5 U.S.C. § 552(a)(3)(A), subject to nine exemptions, *id.* § 552(b)(1)-(9). Relevant here is Exemption 3, which permits agencies to withhold information exempted by a qualifying nondisclosure statute. *See* 5 U.S.C. § 552(b)(3). The nondisclosure statute the Air Force invokes is 10 U.S.C. § 130. Under § 130(a), the Department of Defense (DOD) may withhold certain "technical data with military or space application" that cannot be exported without a specific license under the relevant export control statutes. 10 U.S.C. § 130(a). Subsection 130(b) directs DOD to promulgate regulations that "address, where appropriate, releases of technical data to allies of the United States and to qualified United States contractors." *Id.* § 130(b).

Pursuant to the mandate of § 130(b), the Defense Department issued Directive 5230.25. *See* Withholding of Unclassified Technical Data From Public Disclosure, 49 Fed. Reg. 48,040 (Dec. 10, 1984) (codified at 32 C.F.R. § 250). The

Directive states that, notwithstanding the withholding authority granted by § 130(a), it is DOD policy to provide technical data to "qualified U.S. contractors" for "legitimate business purposes" (with some exceptions). 32 C.F.R. § 250.4(c). To obtain such information, the recipient must accept restrictions on its redistribution. *Id.* § 250.3(a)(3)-(4). Moreover, DOD may withhold -- even from a qualified U.S. contractor -- information that "may jeopardize an important technological or operational military advantage of the United States" unless the contractor identifies a specific bid or contract that the requested information is supporting. *Id.* § 250.5(d)(3). The Directive limits its application to technical data that discloses "critical technology," and it provides that "[t]he release of other technical data shall be accomplished in accordance with" other DOD regulations. *See id.* § 250.2(a)(1).

In 2003 and 2004, Newport -- a qualified U.S. contractor -- filed FOIA requests for 155 technical orders concerning the care, maintenance, and/or repair of military equipment. When the Air Force did not respond, Newport brought the present case. The Air Force then belatedly denied Newport's requests, relying on Exemption 3 and § 130. In its complaint, Newport contended that this denial violated FOIA, 10 U.S.C. § 130, Directive 5230.25, and the Administrative Procedure Act. In particular, Newport alleged that none of the 155 orders depicts "critical technology," which, it contended, means that Directive 5230.25 by its own terms does not apply and that the Air Force violated FOIA by not releasing the orders.

The Air Force ultimately released all 155 orders during the course of settlement discussions. It did not do so under FOIA, however, but rather under Directive 5230.25. Notwithstanding the release, Newport maintained its suit, seeking the orders' release *under FOIA* and a declaration that the Air Force's

alleged policy of applying Directive 5230.25 to noncritical data violates FOIA.

The district court rejected Newport's challenge in two separate rulings. In 2007, it dismissed all of Newport's non-FOIA claims. *Newport Aeronautical Sales v. Dep't of Air Force*, 2007 WL 2007966 (D.D.C. July 11, 2007). Two years later, it dismissed the FOIA counts as well. *Newport Aeronautical Sales v. Dep't of Air Force*, 660 F. Supp. 2d 60 (D.D.C. 2009). In so doing, the court held that § 130(a) is an Exemption 3 statute, and that the orders in question depict qualifying "technical data with military or space application" within the meaning of that subsection. Because the data therefore fell within the exemption, the court concluded that the Air Force did not violate FOIA by withholding it. *Id.* at 66-67.

On appeal, Newport does not challenge the district court's first decision, which dismissed its non-FOIA claims. Instead, it argues only that FOIA entitles it to the documents it seeks. *See* Newport Br. 5; Oral Arg. Recording at 2:13-:25.

II

Before proceeding to the merits, we must first address the Air Force's contention that the case is moot because it has provided Newport with unredacted copies of all 155 orders, albeit under Directive 5230.25 rather than under FOIA. Newport does not respond, as one might expect it would, by arguing that disclosure under the Directive imposes restrictions on its ability to redistribute the information that disclosure under FOIA would not. *See* 32 C.F.R. § 250.3(a)(3)-(4); *infra* Part III. To the contrary, Newport states that it is happy to abide by those restrictions. *See* Newport Br. 19-20.

Newport is not happy, however, with another requirement of Directive 5230.25: that to obtain technical data governed by the Directive, a qualified contractor must sometimes identify a specific bid or contract that the data will support. *See* 32 C.F.R. § 250.5(d)(3). By its terms, Directive 5230.25 so requires, at least when the release "may jeopardize an important technological or operational military advantage," *id.*, and Newport alleges that the Air Force has applied this requirement even when that standard is not met, *see* Newport Br. 4, 16. Newport often cannot show that it is requesting data for the purpose of "permitt[ing] [it] to bid or perform on a contract," 32 C.F.R. § 250.5(d)(3), because it ordinarily sells the information to *other* contractors that are interested in such bids and contracts. Although this requirement is now of no consequence with respect to the 155 documents Newport has already received, it contends that the requirement continues to injure it by interfering with its ability to obtain other Air Force documents in the future. It maintains that the requirement is unlawful because both the Directive and § 130 (the nondisclosure statute) only apply to critical information and not to all of the "technical information" described in § 130(a). Newport seeks a declaratory judgment that the Air Force's continuing refusal to disclose non-critical information without qualification is contrary to FOIA. Am. Compl. at 9.

We have held that the release of requested documents to a plaintiff renders its FOIA suit moot "with respect to those documents." *Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011). We have also held, however, that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90-92 (D.C. Cir. 1986)); *accord City of*

*Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1428-30 (D.C. Cir. 1994). In *Payne*, the court found that the plaintiff's challenge was not moot because, in addition to seeking documents the government had ultimately disclosed, Payne also alleged that the Air Force was "following an 'impermissible practice' in evaluating FOIA requests, and that it will suffer 'continuing injury due to this practice.'" *Payne*, 837 F.3d at 491 (quoting *Better Gov't Ass'n*, 780 F.2d at 91).

As in *Payne*, Newport challenges the permissibility of an Air Force policy: to wit, its practice of denying FOIA requests for data that does not depict "critical technology," and thus requiring Newport to seek the data under the restrictive terms of Directive 5230.25. Newport has also shown that it will suffer continuing injury from this allegedly unlawful policy: its business depends on continually requesting and receiving documents that the policy permits the Air Force to withhold in the absence of bid or contract information that Newport cannot always provide; and the Air Force has no intention of abandoning that policy because it does not believe the policy violates FOIA. *See* Oral Arg. Recording at 19:00-:40. This is enough to avoid mootness under *Payne*.[1]

---

[1] The Air Force asserts that *Payne* was superseded by *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). But this court cited *Payne* approvingly in the post–*Tax Analysts* case of *City of Houston*, *see* 24 F.3d at 1429-30, which is unsurprising given that *Tax Analysts* did not involve a challenge to an agency's ongoing FOIA policy. The passage in *Tax Analysts* cited by the Air Force, which is taken from an opinion that predates *Payne*, merely restates the showing required before a court can order the production of requested records. *See Tax Analysts*, 492 U.S. at 142 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

## III

Having assured ourselves that we have jurisdiction to consider Newport's appeal, we turn to the merits. In so doing, we review the district court's grant of summary judgment de novo. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833-34 (D.C. Cir. 2001). "'In the FOIA context this requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure under the FOIA.'" *ACLU v. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

FOIA Exemption 3 permits agencies to withhold "matters that are . . . specifically exempted from disclosure by [a] statute" other than FOIA itself. *See* 5 U.S.C. § 552(b)(3). To qualify, the statute must either:

> (i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

> (ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld[.]

*Id.* § 552(b)(3)(A). "In short, 'only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption.'" *Wisc. Project on Nuclear Arms Control v. Dep't of Commerce*, 317 F.3d 275, 280 (D.C. Cir. 2003) (quoting *Irons & Sears v. Dann*, 606 F.2d 1215, 1220 (D.C. Cir. 1979)).[2]

---

[2]To qualify as an Exemption 3 statute, a statute enacted after the OPEN FOIA Act of 2009 must also specifically cite to the relevant

When an agency relies on a statute to deny a FOIA request under Exemption 3, a reviewing court must ask two questions: Does the statute meet Exemption 3's requirements? And does the information that was withheld fall within that statute's coverage? *See Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). In this case, we have little difficulty answering "yes" to both questions.

As to the first question: The nondisclosure statute that DOD has invoked, § 130(a), provides in relevant part:

> Notwithstanding any other provision of law, the Secretary of Defense may withhold from public disclosure any technical data with military or space application . . . , if such data may not be exported lawfully outside the United States without an approval, authorization, or license under the Export Administration Act of 1979 or the Arms Export Control Act.

10 U.S.C. § 130(a) (internal citations omitted). Another subsection further defines "the term 'technical data with military or space application'" as:

> any blueprints, drawings, plans, instructions, computer software and documentation, or other technical information that can be used, or be adapted for use, to design, engineer, produce, manufacture, operate, repair, overhaul, or reproduce any military or space equipment or technology concerning such equipment.

---

paragraph of FOIA. 5 U.S.C. § 552(b)(3)(B). That requirement is not at issue here because 10 U.S.C. § 130(a), first codified at 10 U.S.C. § 140, was enacted well before 2009. *See* Pub. L. No. 98-94, § 1217(a), 97 Stat. 690 (1983).

*Id.* § 130(c). Because "technical data with military or space application," as further defined by subsection 130(c), plainly sets forth a "particular type[] of matter[] to be withheld," 5 U.S.C. § 552(b)(3)(a)(ii), subsection 130(a) readily qualifies as an Exemption 3 statute.

Answering the second question requires even less discussion. There is no disagreement that the information Newport seeks qualifies as "technical data with military or space application," and that it cannot be exported without a specific license under the relevant export statutes. Accordingly, the withheld information plainly falls within the coverage of § 130(a).

This would ordinarily end our inquiry, especially because Newport does not seriously dispute any of the above analysis. Nonetheless, Newport insists that Congress intended § 130(a)'s withholding authority under FOIA to be limited by regulation to "sophisticated technologies," which it equates with the "critical technologies" that it maintains are excluded from the purview of Directive 5230.25. Newport contends that the rulemaking authority contained in subsection (b) of § 130, as well as the statute's legislative history, demonstrate this congressional intent; that § 130(a) cannot be applied without such a limiting regulation; and that Directive 5230.25 -- which DOD issued under § 130(b) -- incorporates the required limitation.

There is nothing in the text of § 130(b) that evidences a congressional intent to restrict by regulation the broad authorization to withhold data from FOIA disclosure that § 130(a) grants the Secretary of Defense. Subsection 130(b) does direct the Secretary to promulgate regulations, but the only regulations it mentions concern "releases of technical data *to allies of the United States and to qualified United States contractors.*" 10 U.S.C. § 130(b) (emphasis added). This

cannot be a reference to disclosure under FOIA because that statute requires agencies to make nonexempt records "available to any person." 5 U.S.C. § 552(a)(3)(A). That is, "FOIA does not make distinctions based on who is requesting the information." *Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996). Indeed, such distinctions would serve little purpose because "[o]nce records are released, nothing in FOIA prevents the requester from disclosing the information to anyone else," *id.* at 500, including (as Newport acknowledges) to a country like North Korea, *see* Oral Arg. Recording at 11:30-12:05. Accordingly, a provision that contemplates releases only to U.S. allies and contractors cannot be read as limiting the Defense Department's withholding authority under FOIA.[3]

Newport further contends that the legislative history of § 130 demonstrates that Congress intended the Defense Department to issue regulations under § 130(b) that would narrow § 130(a)'s withholding authority. Because § 130's text and structure so plainly refute Newport's position, we think little of this argument. As the Supreme Court has recently emphasized, specifically in the FOIA context, "[l]egislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1267 (2011).

---

[3]By comparison, we note that there is another provision in § 130 that may in fact evidence congressional intent to restrict by regulation the FOIA exemption authorized by § 130(a). The last sentence of § 130(a) states: "However, technical data may not be withheld under this section if regulations promulgated under either [the Export Administration Act or the Arms Export Control Act] authorize the export of such data pursuant to a general, unrestricted license or exemption in such regulations." 10 U.S.C. § 130(a). Newport does not rely on this provision, presumably because it is inapplicable to the data Newport seeks.

In any event, neither of the congressional committee reports that Newport cites supports its contention. The relevant passage in the Senate Report describes types of "sophisticated technologies" that the Defense Department should "give priority to" in issuing guidelines for withholding under § 130(a). S. Rep. 98-174, at 261 (1983). But it does not say that the Department's withholding authority is limited to such information, or that release of other information should be made pursuant to FOIA without restrictions. The relevant passage in the House Conference Report stresses that "nothing in [§ 130] is for the purpose of limiting competitive bidding on U.S. government contracts," and that "the implementing regulations must address the release of data *to qualified U.S. contractors*." H.R. Rep. 98-352, at 251 (1983) (Conf. Rep.) (emphasis added). But this tells us nothing we do not already know from the text of § 130(b): that Congress envisioned the disclosure, to qualified contractors, of some data covered by § 130(a)'s exemption. It does not show that Congress contemplated the disclosure of such information to the general public under FOIA.

Finally, Newport argues that we should "treat [Directive] 5230.25" as if it were itself "an Exemption 3 statute." And because Newport believes the Directive only authorizes the Air Force to withhold data depicting "critical technology," it argues that all other data must be released under FOIA. Newport Br. 28.

We note, first, that we need not determine whether Directive 5230.25 actually limits withholding to data depicting critical technology, a claim the Air Force rejects.[4] Because

---

[4]The Air Force contends that, although the Directive states that its application is limited to "technical data that disclose critical technology" and that "the release of other technical data shall be accomplished in accordance with" other specified DOD regulations,

Newport has only appealed the dismissal of its FOIA claims, *see* Newport Br. 5, it is not enough for it to show that the Air Force's policy violates Directive 5230.25. It must also demonstrate that the policy violates FOIA.

In support of its suggestion that we treat the Directive -- rather than § 130(a) alone -- as the relevant FOIA exemption statute, Newport cites our decision in *Wisconsin Project on Nuclear Arms Control v. Department of Commerce*, 317 F.3d 275 (D.C. Cir. 2003). Newport describes *Wisconsin Project* as a case in which this court "treated an executive order issued pursuant to Congressional delegation of authority as an Exemption 3 statute." Br. 27. That case, however, is inapposite.

*Wisconsin Project* concerned the confidentiality of applications for export licenses submitted by manufacturers of "dual-use commodities" -- products that can be used for both military and civilian purposes. 317 F.3d at 277. The Export Administration Act (EAA) contained an express authorization permitting the Commerce Department to withhold information contained in such applications, *see* 50 U.S.C. app. § 2411(c), and the Department incorporated that withholding provision in its export regulations, 317 F.3d at 278. The problem was that the EAA was enacted as a temporary measure, had lapsed and been reinstated several times, and had lapsed again at the time the plaintiff filed a FOIA request for certain license applications. But in addition to the EAA, Congress had enacted another statute, the International Emergency Economic Powers Act, 50

---

32 C.F.R § 250.2(a)(1), those other DOD regulations "do not require unfettered access to non-critical technology," Air Force Br. 29. According to the Air Force, the other regulations "do not compel the Air Force to release the Technical Orders at issue," but rather "specifically permit application of Exemption 3 statutes to the Technical Orders." *Id.* at 30.

U.S.C. § 1701 *et seq.*, which gave the President emergency authority to regulate certain exports, and which "Congress intended the President to use . . . 'to continue the Export Administration Regulations in effect' should a 'lapse' occur in the EAA." 317 F.3d at 278 (quoting H. R. Rep. 95-149, at 13 (1977)). Exercising that authority when the lapse did occur, the President issued an executive order directing "that the EAA's provisions 'be carried out under this order so as to continue in full force and effect.'" *Id.* at 279 (quoting Exec. Order No. 12,924, 59 Fed. Reg. 43,437, 43,437 (Aug. 19, 1994)). In light of this "unique statutory framework created by Congress to retain the confidentiality of export data," the court concluded that the data was exempt from disclosure under FOIA. *Id.* at 277.

The decision in *Wisconsin Project* depended on two premises, neither of which holds here. First, the court looked to the executive order only because the principal nondisclosure statute, the EAA, had lapsed. Here, 10 U.S.C. § 130 is in full effect, and there is no reason to look elsewhere to assess the Air Force's withholding authority. Second, the court emphasized that the executive order "*continued precisely* the provision originated and written by Congress" -- namely, the EAA. 317 F.3d at 284 (emphasis added). Here, by contrast, Newport maintains that the Directive only authorizes withholding of data that discloses critical technology, a limitation absent from the provision written by Congress -- namely, § 130. With these two premises missing, *Wisconsin Project* has no application to this case.

IV

In sum, we conclude that § 130(a) is an Exemption 3 statute, and that it covers the FOIA requests that Newport has made to the Air Force. Because § 130(b) does not address

14

disclosures under FOIA, nothing in that subsection or the regulations promulgated thereunder limits the withholding authority granted by § 130(a). As a consequence, even assuming *arguendo* that the Air Force is violating Directive 5230.25 by restricting the disclosure of technical information that does not depict "critical technology," that practice does not violate FOIA. And, as we have noted above, the only issues that Newport has preserved on this appeal are its FOIA claims.[5] Accordingly, the judgment of the district court is

*Affirmed*.

---

[5]Newport's brief contends that the Air Force also violated FOIA by failing to disclose "reasonably segregable" portions of the documents at issue. Br. 34. The nature of this contention is somewhat unclear. To the extent Newport is arguing that the Air Force should have redacted the portions relating to "critical technology" and released the remainder, *id.*, this contention is foreclosed by our conclusion that the withholding authorized by § 130(a) is not limited to critical technology. To the extent Newport is claiming that some of the information in the documents it seeks has previously been disclosed in other documents released under FOIA, and so should be released under FOIA again, *id.* at 34-35 (citing *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999)), that claim is about specific documents rather than policy, and thus has been mooted by Newport's receipt of the requested documents pursuant to Directive 5230.25. *See Payne*, 837 F.3d at 490-91; *supra* Part II.