# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2012              Decided January 4, 2013

No. 11-5089

BENNY LEE HODGE,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION AND UNITED STATES
DEPARTMENT OF JUSTICE,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00403)

———

*Elizabeth Anne Cassady* argued the cause for appellant. On the brief were *Margaret K. Pfeiffer* and *Mary-Louise M. Huth*.

*Jeremy S. Simon*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Benny Lee Hodge was convicted in Kentucky state court of three murders, and he was sentenced to death. The murders occurred during the summer of 1985. Hodge's conviction and sentence have been affirmed on appeal in state court and in state and federal habeas proceedings. *See Hodge v. Commonwealth*, 2011 WL 3805960 (2011) (unpublished opinion); *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009); *Hodge v. Commonwealth*, 116 S.W.3d 463 (Ky. 2003); *Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky. 2000); *Epperson v. Commonwealth*, 809 S.W.2d 835 (Ky. 1990).

The FBI participated in the initial investigation because Hodge had impersonated an FBI agent during one of the murders and Hodge had fled across state lines with $1.9 million stolen from one victim. In 2002, while on death row in Kentucky, Hodge submitted a FOIA request to the FBI seeking "a complete and thorough search of all filing systems and locations for all records" that the FBI had created during its investigation of him. J.A. 28-29. In response, the FBI initially gathered and reviewed 569 pages of potentially responsive documents. The FBI released 361 pages of documents to Hodge and claimed exemptions over the remaining documents.

Dissatisfied with the FBI's production, Hodge filed suit. After suit was filed, the FBI conducted additional searches. In sum, it found more than 6,000 pages of potentially responsive material, and it ultimately released 1,762 pages of additional documents to Hodge. As relevant here, the FBI asserted FOIA Exemptions 3, 7(C), and 7(D) with respect to the remaining documents.

The District Court granted the FBI summary judgment, ruling that the FBI had released all non-exempt documents as required by FOIA; that the FBI performed an adequate search; and that the FBI correctly applied FOIA Exemptions 3, 7(C), and 7(D).  We review the District Court's grant of summary judgment de novo.  *See Juarez v. Dept. of Justice*, 518 F.3d 54, 58 (D.C. Cir. 2008).  We affirm.

\* \* \*

*First*, Hodge claims that the FBI improperly withheld certain documents that the FBI had released in a separate FOIA matter to one of his murder accomplices.  According to Hodge, the FBI's release of 125 unredacted pages to his accomplice proves that the FBI did not give him all of the documents to which he was entitled.  The fundamental flaw in Hodge's chain of reasoning is the premise:  In fact, Hodge's accomplice did not receive those documents under FOIA.  There may have been a genuine dispute on this point at a previous stage of the litigation, but while this appeal was pending, Hodge learned of 450 pages of redacted documents released to his accomplice under FOIA.  This strongly suggests, as Hodge himself acknowledged, that the original 125-page release was made pursuant to criminal discovery, not a FOIA request.  Therefore, we reject the argument that the FBI improperly withheld the 125 pages.[1]

---

[1]  Hodge's counsel stated at oral argument that Hodge was not "entirely conceding" that the 125-page report was not a FOIA release.  Oral Arg. Tr. 4.  But Hodge's briefs acknowledge that the information he has received since the grant of summary judgment suggests that the FBI's characterization of that report was correct. *See* Appellant Br. 7.  We interpret Hodge's position to be an effective concession that there is no genuine issue of material fact as to the nature of these documents, so we treat the issue as waived.

*Second*, Hodge argues that the FBI's search for responsive documents was inadequate. Hodge points out that the FBI found additional responsive documents when it conducted new searches after this suit was filed. According to Hodge, the FBI therefore cannot meet its burden of "show[ing] beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citation and internal quotation marks omitted).

In general, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted). To be sure, we have acknowledged that the "discovery of additional documents is more probative that the search was not thorough than if no other documents were found to exist." *Goland v. CIA*, 607 F.2d 339, 370 (D.C. 1979) (per curiam); *see Krikorian v. Dept. of State*, 984 F.2d 461, 468 (D.C. Cir. 1993). But by the time a court considers the matter, it does not matter that an agency's *initial* search failed to uncover certain responsive documents so long as subsequent searches captured them. After all, a requester's argument about the alleged inadequacy of a search is necessarily an argument for forward-looking relief. Therefore, what matters once the agency has fulfilled its burden under FOIA of conducting "reasonably calculated" searches is whether the requester can identify any additional searches that must be conducted.

Here, because the sworn declarations from the FBI indicate that it conducted "reasonably calculated" searches, the burden is on Hodge to identify specific additional places the agency should now search. *Compare Iturralde*, 315 F.3d at 315 (ruling for agency because requester did not claim

agency failed to search particular offices or files), *with Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 326-27 (D.C. Cir. 1999) (ruling against agency because the agency failed to search another location that would likely have contained responsive documents). But Hodge has not identified any specific additional searches that he believes the FBI should have conducted. Hodge asserts that the FBI may possess additional responsive documents, but he offers no basis for concluding that those documents might exist. As we have said before, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Therefore, we reject Hodge's complaint about the alleged inadequacy of the search.

*Third*, Hodge contends that the FBI improperly asserted Exemption 3, Exemption 7(C), and Exemption 7(D) to withhold various documents.

Exemption 3 covers information that is protected from disclosure by another statute. *See* 5 U.S.C. § 552(b)(3). In this case, the FBI withheld information that was related to grand jury proceedings and protected by Rule 6(e) of the Federal Rules of Criminal Procedure. Rule 6(e) applies if the disclosed material would "tend to reveal some secret aspect of the grand jury's investigation," including "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation," or "the deliberations or questions of jurors." *Senate of the Commonwealth of Puerto Rico v. Dept. of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (citations and internal quotation marks omitted). Here, the FBI explained that the relevant material "documents the identities of individuals who were either the recipients of a Federal Grand Jury Subpoena and/or testified before a Federal

Grand Jury." J.A. 46. Hodge does not contest the accuracy of this claim. Because the FBI's explanation shows that the material is covered by Rule 6(e), the material is in turn covered by FOIA Exemption 3.

Exemption 7(C) applies to "records or information compiled for law enforcement purposes," if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In this case, the FBI asserted Exemption 7(C) to protect private information of various investigators, witnesses, informants, and suspects. Individuals who fall into these groups have a cognizable privacy interest under the exemption. *See Schrecker v. Dept. of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). Moreover, we have recognized that private citizens – such as witnesses, informants, and suspects – have particularly strong privacy interests. *Martin v. Dept. of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007). As the Supreme Court has explained, the "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." *Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 765 (1989).

In response, Hodge claims that there is a public interest in disclosure of this material because it could reveal government misconduct. To establish such a public interest and thereby trigger the Exemption 7(C) balancing of public and private interests, the requester "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Hodge has not offered such evidence, however, so we uphold the FBI's assertion of Exemption 7(C).

Exemption 7(D) protects records compiled by law enforcement during the course of an investigation if "producing the records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished' by such a source." *Roth v. Dept. of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (quoting 5 U.S.C. § 552(b)(7)(D)).  The FBI is not entitled to a blanket presumption that all witnesses in a criminal investigation provided information with an implicit understanding of confidentiality.  Instead, the FBI must point to "more narrowly defined circumstances" suggesting that a witness's identity was expected to be kept confidential.  *Dept. of Justice v. Landano*, 508 U.S. 165, 179 (1993).

When a law enforcement agent provides *express* assurances of confidentiality to a witness, the issue is simple enough:  The agency must present "probative evidence that the source . . . receive[d] an express grant of confidentiality." *Campbell v. Dept. of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998) (citation and internal quotation marks omitted).  Here, the FBI explained in a sworn declaration referencing witness interview documents marked "protect" or "protect identity" that two of the witnesses at issue were expressly promised confidentiality.  J.A. 63; *see Billington v. Dept. of Justice*, 233 F.3d 581, 585 (D.C. Cir. 2000).  The FBI has readily satisfied Exemption 7(D) for those two witnesses.

For a few other witnesses at issue in this case, the FBI argues that there were *implicit* indications of confidentiality. The Supreme Court has recognized several factors as relevant in determining whether a witness provided information under an implicit assurance of confidentiality, including the "character of the crime at issue." *Landano*, 508 U.S. at 179. Following *Landano*, we have recognized that the character of the crime may support an inference that a witness provided

information on a confidential basis, particularly if the criminal activity involved is "of a type inclined toward violent retaliation." *Mays v. DEA*, 234 F.3d 1324, 1330-31 (D.C. Cir. 2000).

In this case, the FBI has explained, again in a sworn declaration, how disclosing the identities of the witnesses in question "could have disastrous consequences" and could "subject them to violent reprisals." J.A. 60. Given the vicious nature of the crimes and the explanation offered in the FBI's affidavits, we conclude that the witnesses who provided the relevant information about Hodge's involvement in the murders would have expected that their identities remain confidential. Therefore, under the circumstances of this case, we sustain the FBI's assertion of Exemption 7(D).

Although the FBI has properly applied Exemption 3, Exemption 7(C), and Exemption 7(D), that does not yet end the matter. Hodge contends that the District Court should have reviewed the withheld documents in camera to review the claimed exempt material. But our case law has rejected the argument that district courts are required to conduct in camera review in FOIA cases. *See Stolt-Nielsen Transportation Group, Ltd. v. United States*, 534 F.3d 728, 734-35 (D.C. Cir. 2008) (district courts have discretion to rely on affidavits or conduct in camera review to decide whether government has released all reasonably segregable, non-exempt material); *Krikorian*, 984 F.2d at 466-67 (same). Hodge relatedly argues that the FBI failed to provide him with all information that is "reasonably segregable" from exempted material. 5 U.S.C. § 552(b). An "agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Stolt-Nielsen Transportation Group.*, 534 F.3d at 734 (citation and internal quotation marks omitted). In determining whether the FBI

has met this obligation, it is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Hodge has not presented sufficient evidence to rebut that presumption. He identifies three documents that were released to him as part of the FBI's initial response to his search and then released to him a second time as the FBI continued to process his search. The documents contained fewer redactions when released to him a second time; according to Hodge, that fact demonstrates that the FBI is improperly withholding material. We disagree. As is the case with searches, what matters is that, in the end, Hodge received the material to which he was entitled and has not shown a basis to question the remaining redactions. Hodge identifies an additional document that he claims contained excessive redactions. The District Court compared the document, including the FBI's annotations specifying which exemptions the FBI was applying, to the FBI's sworn declarations explaining why the FBI's claimed exemptions were applied. We agree with the District Court that the redactions are consistent with the FBI's application of the claimed exemptions. As the District Court explained, it is unsurprising that certain documents would be heavily redacted given the sensitive nature of the investigative reports at issue and the multiple exemptions that apply. We therefore conclude that the FBI has released all reasonably segregable, non-exempt material to Hodge.

\* \* \*

We have considered all of Hodge's arguments. We affirm the judgment of the District Court.

*So ordered.*