# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 12, 2015          Decided June 16, 2015

No. 14-5044

JAMES E. MURPHY,
APPELLANT

v.

EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00573)

———

*Ishan K. Bhabha*, appointed by the court, argued the cause for the appellant. *David W. DeBruin* and *Paul M. Smith*, appointed by the court, were with him on brief.

*James E. Murphy*, pro se, filed the brief for the appellant.

*Peter R. Maier*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant United States Attorney, were with him on brief. *Dionne S. Shy*, Assistant United States Attorney, entered an appearance.

2

Before: HENDERSON, ROGERS and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: James Murphy is a federal prisoner. He submitted a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to the Executive Office for United States Attorneys (EOUSA), a part of the United States Department of Justice. *See Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007). FOIA requires federal agencies to produce "records" upon request unless one of nine statutory exemptions applies. 5 U.S.C. § 552(a)(3)(A). Murphy sought grand jury information for two criminal cases. The EOUSA gave Murphy most of the information that he requested but it declined to disclose the dates and times of day that the grand jury met to hear testimony and consider evidence in the two cases. The EOUSA invoked exemption 3 to justify its non-disclosure. Murphy contends—unsurprisingly—that exemption 3 is inapplicable and filed suit to compel the EOUSA to disclose the withheld material. The district court ultimately held that exemption 3 was properly invoked and granted summary judgment to the EOUSA. We affirm.

**I**

FOIA implements "a general philosophy of full agency disclosure." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989). The statute requires federal agencies to make "records promptly available" when an individual submits a "request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules." 5 U.S.C. § 552(a)(3)(A). An agency, however, can reject the request if it "fall[s] within one of nine

exemptions." *Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1262 (2011); *see* 5 U.S.C. § 552(b)(1)–(9). The United States Supreme Court has stated that the exemptions must be "narrowly construed" because "the mandate of the FOIA calls for broad disclosure of Government records." *DOJ v. Julian*, 486 U.S. 1, 8 (1988) (alteration omitted). The Court has also cautioned, however, that each exemption must be given "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

The exemption relevant here is exemption 3, which permits an agency to withhold records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). We have recognized that "requests for documents related to grand jury investigations implicate FOIA's third exemption." *Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005). Rule 6(e) of the Federal Rules of Criminal Procedure prohibits certain persons designated therein (including government attorneys) from "disclos[ing] a matter occurring before the grand jury," FED. R. CRIM. P. 6(e)(2)(B), and, although a rule is not generally considered to be a statute, it qualifies as one under FOIA because the Congress has enacted it into positive law. *See Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 867–68 (D.C. Cir. 1981) (citing Pub. L. No. 95-78, § 2(a), 91 Stat. 319 (1977)). Hence, information related to a grand jury matter may be withheld under exemption 3 "if the disclosed material would tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses." *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quotation marks omitted).

In 2008, Murphy was charged with distribution, possession and conspiracy to distribute and possess heroin and crack cocaine. *See United States v. Murphy*, 460 F. App'x 122, 123 (3d Cir. 2012). He was convicted of both counts

after a two-day jury trial and sentenced to 360 months' imprisonment. *Id.* In 2013, Murphy submitted two FOIA requests to the EOUSA for "information and documents." Joint Appendix (JA) 25, 31. His first FOIA request asked for:

> disclosure of the dates that the grand jury convened in reference to case # 1:08-CR-00433 and case # 1:08-CR-314 filed in U.S. District Court for the Middle District of Pennsylvania including the names [sic] of the Judge who summoned the grand jury, the date the indictments were returned, the date they were discharged, the starting and ending date of the grand jury's term, and a certified copy of the courts [sic] minute entries.

*Id.* at 39. Case number 08-CR-00433 is Murphy's criminal case and case number 08-CR-00314 is a criminal case involving Richard Byrd.

Approximately two months later, Murphy submitted a second FOIA request that sought:

> disclosure of the dates the grand jury issued the indictments pertaining to criminal No. 1:08-CR-314 and 1:08-CR-0433 . . . including the dates and times of sessions the grand jury convened, whether it was summoned pursuant to Fed. R. Crim. P. 6(a), or 18 U.S.C. 1331, and the certified letter requesting the special grand jury . . . the caption of the indictment . . . [and] an unredacted copy of the indictment of Case No. 1:08-CR-314 pursuant to Fed. R. Crim. P. 49.1(b)(9).

*Id*. at 42. Before the EOUSA responded to his requests, Murphy filed suit in federal district court.[1] He challenged the EOUSA's invocation of exemption 3 and alleged that the grand jury indictments were inaccurate and that the EOUSA's search for records was inadequate. He asked the court to order the EOUSA to produce the "agency records previously requested by [him]." Am. Compl. ¶ 1.

After Murphy filed his complaint, the EOUSA responded to both of his FOIA requests. It first told Murphy that it intended to disclose "all records required to be released, or considered appropriate for release as a matter of discretion." JA 45. These included "the date the grand jury was impaneled and expired; the name of the judge who supervised the grand jury; [and] the date on which the grand jury was convened and returned an indictment for each particular criminal case." *Id.* at 37. It also disclosed that both of the "grand juries . . . were summoned pursuant to Fed. R. Crim. P. 6(a)." *Id.* at 47. Other than its disclosure of the date on which the grand jury issued indictments, the EOUSA declined to provide the specific dates and "times the grand juries convened" between the date of empanelment and the date each grand jury was discharged "in order to protect the identity of witnesses and the

---

[1] Murphy properly filed suit before the EOUSA responded to his requests because he had constructively exhausted his administrative remedies. "As a general matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *Citizens for Responsibility and Ethics in Wash. v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013). But a requester "shall be deemed to have exhausted his administrative remedies with respect to [his] request" if the agency does not respond to the FOIA request within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i), (C)(i). The EOUSA did not timely respond to Murphy's FOIA requests and Murphy then began this litigation.

secrecy of the grand jury proceedings." *Id*. It invoked exemptions 3 and 7(C) to support its decision.[2] *Id*.

Less than one month after responding to Murphy's second FOIA request, the EOUSA moved for summary judgment. The district court granted the motion in part. *See Murphy v. EOUSA*, 11 F. Supp. 3d 1, 3 (D.D.C. 2013). It held that Murphy's claims regarding the accuracy of the records and the adequacy of the government's search were premised on a "misunderstanding." *Id*. at 5. According to the court, Murphy's claim that some of the records were inaccurate and that others did not disclose what he "expected to find" did not amount to a FOIA violation. *Id*. It then found the EOUSA's declaration, executed by EOUSA attorney advisor Kathleen Brandon, insufficient because it contained only one "obscure statement" related to exemption 3. *Id*. at 6. The court therefore ordered the EOUSA to disclose each date and the times of day on each date that the grand jury convened to consider Murphy's and Byrd's cases.[3] *Id*. at 7.

---

[2] Exemption 7(C) permits an agency to withhold records "compiled for law enforcement purposes" if disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7). Because we hold that the EOUSA properly invoked exemption 3, we do not address whether it also properly invoked exemption 7(C). *See Larson v. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("agencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability" of others).

[3] So that the record is clear, we describe exactly the information that was disclosed to Murphy. Murphy requested and received the date the grand jury was empaneled, the date the grand jury returned indictments and the date the grand jury was discharged. In his

second FOIA request, Murphy explicitly requested "the dates and times of sessions the grand jury convened" whenever the grand jury met to consider his case and Byrd's case during the approximately six-month period between empanelment and discharge. JA 42; *see also supra* pp. 4–6 (describing Murphy's FOIA requests and EOUSA's response thereto). The EOUSA did not disclose that information to Murphy but did disclose it to the district court *in camera*. *See Murphy v. EOUSA*, 11 F. Supp. 3d 7, 9 (D.D.C. 2014) (district court reviewed *in camera* "the documents which contain . . . the requested times that the grand jury convened"). The EOUSA also disclosed the same material to this Court *in camera*. The EOUSA counsel confirmed in a post-argument letter to this Court that the dates and times of day the grand jury met to consider Murphy's and Byrd's cases have not been disclosed to Murphy. Therefore, the only information in dispute—and the only information Murphy has not yet received—covers the dates and times of day the grand jury met to consider Murphy's and Byrd's cases as distinct from the dates the grand jury issued its indictments in the two cases.

What confusion may have existed is likely due to Murphy's use of "convene." "Convene" usually refers to the empanelment of the grand jury. *See Convene*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("To call together, esp. for a formal meeting; to cause to assemble."); *see also, e.g.*, *In re Sealed Case*, 199 F.3d 522, 523 (D.C. Cir. 2000) (independent counsel "convened a grand jury to consider evidence"). The EOUSA disclosed that information to Murphy. JA 45 (releasing the date the grand jury was empaneled to Murphy). But he also asked for the "dates and times of sessions the grand jury *convened*" to consider both his case and Byrd's case. *Id.* at 42 (emphasis added). We take him to mean the dates and times the grand jury met to consider evidence or to deliberate in his and Byrd's cases separate from the dates the grand jury indictments issued. *Amicus* agrees with our interpretation of Murphy's FOIA request. *See Amicus* Br. 16 (Murphy has "the dates the grand juries began their sessions" but not the dates and times of day "the grand juries were in session" after empanelment).

Both parties moved for reconsideration. *See Murphy*, 11 F. Supp. 3d at 8. The EOUSA also filed a supplemental declaration, again executed by Brandon, in support of its motion. The district court noted that Murphy's motion for reconsideration contained the same arguments he had previously made regarding the adequacy of the search and the accuracy of the records. *See id.* at 8–9. Because he did not identify "an intervening change in the law," "new evidence not previously available" or "a clear error in the first order," the district court denied his motion. *Id.*

The district court, however, granted the EOUSA's motion for reconsideration after reviewing the withheld material *in camera* and concluding that it "contain[ed] information that would reveal secret aspects of a grand jury investigation." *Id.* at 9. Additionally, the court held that the withheld material was "inextricably intertwined" with non-exempt information, making it infeasible to segregate and produce any unprotected information. *Id.* Accordingly, it granted summary judgment to the EOUSA. *Id.* Murphy timely appealed. We appointed *amicus curiae* to present arguments in support of Murphy's position.

**II**

We review *de novo* the district court's grant of summary judgment. *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 335 (D.C. Cir. 2011). Our task on appeal is to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under the FOIA." *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (alteration omitted). An agency can meet this burden by submitting "affidavits [that] describe the justifications for nondisclosure with reasonably specific detail" and

"demonstrate that the information withheld logically falls within the claimed exemption." *Larson*, 565 F.3d at 862. We have emphasized that an agency's task is not herculean. The justification for invoking a FOIA exemption is sufficient if it "appears logical or plausible." *Id*. (quotation marks omitted). We believe the EOUSA's basis for invoking exemption 3 is both logical and plausible.

The EOUSA's supplemental Brandon Declaration explains why releasing the dates and times of day the grand jury convened to consider Murphy's and Byrd's cases could reveal grand jury witness identities. Assume that a suspect knows his girlfriend witnessed the crime he is suspected of committing. Also assume (plausibly) that he can discover from friends or family members whether his girlfriend was absent from work or school on a particular day and time. Once convicted, the suspect wants to know whether his girlfriend in fact provided testimony to the grand jury. If the government discloses the dates and times of day that the grand jury convened, he can compare those dates and times with his girlfriend's corresponding absences. If the grand jury met on a day and time that his girlfriend missed school or work, he could infer that she could have testified before the grand jury. *See* JA 56–57 (providing similar example).[4]

---

[4] This is not the only scenario that could involve a risk of disclosing the identity of a grand jury witness. The same risk could occur if the criminal defendant and the suspected grand jury witness are cellmates. Knowing when the grand jury met could provide an easy way for him to determine whether his cellmate was likely providing testimony. If the grand jury met on a day and at a time that the cellmate was absent, the inference is plain: His cellmate could have testified. Moreover, cellmates' close proximity to one another enhances the opportunity for (and success of) retaliation, which

The EOUSA's position is all the more reasonable because it is based on extensive experience. The EOUSA declarant was an assistant United States Attorney with more than twenty years' experience handling criminal cases in federal court. *Id*. at 56. She averred that she "went to great lengths" to keep grand jury proceedings secret in order to "protect the identity of the witnesses." *Id*. Secrecy is essential because, in her experience, "defendants often went to great lengths to discover the identity of witnesses in their cases, both before and after trial." *Id*. at 57. We cannot lightly brush aside both the logic and experience underlying the EOUSA's decision to withhold the requested information. *Cf. McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1190 (D.C. Cir. 2004) (suggesting government can justify disclosure under FOIA with "special knowledge based upon its experience"); *Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (government affidavits explaining why material was classified were entitled to deference because of affiants' "experience").

Granted, simply because an individual misses work or is otherwise unaccountably absent does not mean we can be certain that he provided testimony to a grand jury. But exemption 3 is not limited to circumstances that are *certain* to reveal a witness's identity. Instead, the exemption is properly invoked if "the disclosed material would *tend* to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses." *Hodge*, 703 F.3d at 580 (emphasis added; quotation marks omitted). A tendency need only make a result more likely. *See Tendency*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("leaning," "inclination" or "bent toward some . . . result"). The EOUSA has demonstrated how

raises an even more compelling security concern than with someone who is not confined with the defendant. *See* JA 56–57.

disclosing the specific dates and times of day a grand jury met to consider a particular "matter" makes it more likely that a witness's identity can be discovered. *See supra* pp. 9–10; *see also Lopez*, 393 F.3d at 1350 ("[R]evealing the dates of preliminary interviews conducted for the purposes of 'screening' potential [grand jury] witnesses *may in fact tend* to reveal some secret aspect of the grand jury." (emphasis added; some quotation marks omitted)).

The EOUSA's position also draws from the plausibility of its explanation for invoking exemption 3. It reasonably believes that a criminal suspect or defendant not only wants to discover a grand jury witness's identity but that he may also want to retaliate against that witness. *See* JA 57 (if "defendants . . . discover the identity of witnesses," "that person's safety was in jeopardy"). Federal prosecutors are not the only ones who believe that grand jury witnesses confront a risk of retaliation; the Congress falls squarely in that camp as well. That is why federal law prohibits tampering with or retaliating against witnesses. *See* 18 U.S.C. § 1512 (witness tampering unlawful); *id*. § 1513 (retaliation against witnesses unlawful). These laws are not a solution in search of a problem; there are countless cases dealing with successful criminal prosecutions for both witness tampering and witness retaliation. *See, e.g.*, *United States v. Wardell*, 591 F.3d 1279, 1283 (10th Cir. 2009) (affirming conviction of "conspiring to retaliate against a witness" and "retaliating against a witness"); *United States v. Wilson*, 160 F.3d 732, 736 (D.C. Cir. 1998) (affirming convictions of "conspiracy to kill a witness, killing a witness with intent to prevent him from testifying, [and] retaliating against a witness" (citations omitted)); *United States v. Cunningham*, 54 F.3d 295, 297 (7th Cir. 1995) (affirming convictions of "retaliating against a federal witness"). And grand jury witnesses in particular—despite the government's best efforts to keep their identities

secret—have not been immune from similar threats. *See, e.g.*, *United States v. Gallimore*, 491 F.3d 871, 873 (8th Cir. 2007) (affirming defendant's sentence after he "pled guilty to retaliating against a grand jury witness"); *United States v. Maggitt*, 784 F.2d 590, 594 (5th Cir. 1986) (affirming conviction of tampering with and retaliating against witness because jury could have found defendant's "threat was intended in retaliation against [the witness] for his earlier testimony before the grand jury").

The reported cases highlight that the risk of witness retaliation is real or, at least, "plausible." *Larson*, 565 F.3d at 862. The risk of retaliation against grand jury witnesses is one reason for maintaining grand jury secrecy. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 (1958) ("long-established policy" of grand jury secrecy rests in part on "encourag[ing] all witnesses to step forward and testify freely without fear of retaliation"). The government plainly has a strong interest in witness safety.

While the consequence of disclosing information that tends to reveal the identity of grand jury witnesses is, by itself, substantial, that risk alone is not the only reason for protecting the times and dates a grand jury considered evidence or deliberated in a particular case. Disclosing the days and times a grand jury met to consider evidence and hear testimony would also reveal the content of grand jury deliberations by disclosing how long a particular "matter occurr[ed] before the grand jury," FED. R. CRIM. P. 6(e), how much or how little evidence was weighed and which witnesses most occupied the grand jury's time. That information could shed light on the nature of the grand jury's investigative and deliberative processes. Because disclosing the day-and-time information Murphy sought would tend to reveal the complexity and "scope, focus and direction of the grand jury investigations,"

that information is protected from disclosure by Rule 6(e) even if no disclosure of witness identity or risk of retaliation exists. *See Fund for Constitutional Gov't*, 656 F.2d at 869.

*Amicus* offers several rejoinders. We find none of them persuasive. First, *amicus* argues that the supplemental Brandon Declaration is insufficient because it does not point to an actual case in which a witness's identity was revealed after disclosing the dates and times of day a grand jury met. But the basis for invoking exemption 3 need only be "logical or plausible." *Larson*, 565 F.3d at 862. A risk of harm is plausible even if the anticipated harm has not yet materialized. *See ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011) ("[A] reviewing court must take into account that any affidavit or other agency statement of threatened harm . . . will always be speculative to some extent, in the sense that it describes a potential future harm." (quotation marks and ellipsis omitted)). Likewise, an explanation is no less plausible because it posits persuasive hypotheticals rather than real-world examples. *Cf. Mudge Rose Guthrie Alexander & Ferdon v. ITC*, 846 F.2d 1527, 1532 (D.C. Cir. 1988) (suggesting agency could have cured insufficient FOIA affidavit by providing "hypothetical examples").

Second, *amicus* contends there is little risk that Murphy could use the requested information to identify grand jury witnesses because the grand juries convened five to seven years ago. But there is no time limit on the secrecy of grand jury proceedings. *See Fund for Constitutional Gov't*, 656 F.2d at 869 n.32 ("the chronological remoteness of grand jury proceedings bears no relevance to [a] FOIA inquiry" and "[t]he general rule [of grand jury secrecy] admits to no exception for old grand jury proceedings"). Moreover, we have previously decided FOIA cases seeking years-old grand jury information and not once intimated that the passage of time made Rule 6

inapplicable. *See Hodge*, 703 F.3d at 579 (2002 FOIA request seeking grand jury information related to 1985 conviction); *Lopez*, 393 F.3d at 1347 (1997 FOIA requests seeking grand jury information leading to 1990 indictment).

A*micus* further claims that the information which we have previously held to be covered by exemption 3 is different from the date-and-time information that Murphy wants. *Amicus* states that, notwithstanding that documents that include the name of a grand jury witness necessarily disclose his identity, the same cannot be said for the dates and times of day a grand jury meets. This argument misunderstands what is needed to successfully invoke exemption 3. The test is whether "the disclosed material would *tend* to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses." *Hodge*, 703 F.3d at 580 (emphasis added).

Finally, *amicus* identifies three cases in which the Justice Department allegedly disclosed the dates and times of day a grand jury convened to hear testimony. We find all three inapposite. In one, the Justice Department was ordered to disclose "the date the grand jury convened, the date the indictment was returned or issued, and the date the grand jury was discharged." *Hill v. DOJ*, No. 11-cv-00273, ECF No. 29, at 8 (D.D.C. Dec. 19, 2011) (magistrate report and recommendation). This information revealed nothing more than when "the grand jury's work began and ended." *Id*. Murphy has this information for the two criminal cases identified in his FOIA requests.

In the second case, the Justice Department declined to disclose "the dates the grand jury convened." *Peay v. DOJ*, No. 04-cv-1859, 2007 WL 788871, at *3 (D.D.C. Mar. 14, 2007). The district court denied the government's summary judgment motion because its declaration did not explain "how

the disclosure of the dates the grand jury convened would tend to reveal a 'secret aspect' of the grand jury investigation." *Id*. In contrast, we have here the second Brandon Declaration.

*Amicus* also points to *North v. DOJ*, 774 F. Supp. 2d 217 (D.D.C. 2011), a district court case in which the Justice Department released "cover sheets and final pages of transcripts of grand jury testimony . . . that indicated the date that the testimony was given." *Id*. at 220. The Justice Department had initially withheld the information; it was released only *after* the district court found its FOIA declarations wanting. *Compare North v. DOJ*, No. 08-cv-01439, ECF No. 17-1, at 6, ¶ 19 (D.D.C. Dec. 12, 2008) (categorically denying "entire [FOIA] request" because "all of the materials requested were specifically identified as grand jury materials"), *with id*. ECF No. 71-1, at 5, ¶ 14 (D.D.C. Apr. 15, 2010) (releasing documents that "allow plaintiff to see when the proceedings took place since the redactions do not include the dates"). The Justice Department's initial response in *North* is consistent with the EOUSA's position here, namely, that the dates and times of day the grand jury meets to consider a specific case are protected by exemption 3. In any event, *North* does not bind this court.[5]

---

[5] *Amicus* also contends that the district court's segregability analysis was insufficient. We disagree. An agency can withhold records that are exempt from disclosure under FOIA but it must produce "[a]ny reasonably segregable" portion thereof that does not fit one of the statutory exemptions. 5 U.S.C. § 552(b). Here, however, there is no segregability problem. Murphy requested specific "information"—*i.e.*, the dates and times of day the grand jury met to consider his case and Byrd's case. JA 25, 31. Once the EOUSA declined to disclose the requested information, there was nothing left to segregate. *Cf. Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 370

Finally, we address one remaining minor issue. In his informal brief to this Court, Murphy requested an unredacted copy of the indictment in Byrd's case. Murphy admitted in district court that the only redacted information in the Byrd indictment was the grand jury foreperson's name and signature. This information is plainly protected under exemption 3. *See Hodge*, 703 F.3d at 580 (exemption 3 protects information that would "tend to reveal some secret aspect of the grand jury's investigation, including the identities of . . . jurors" (quotation marks omitted)). Although the EOUSA has not invoked exemption 3 to protect the identity of the grand jury foreperson, we can uphold *ex mero motu* non-disclosure of information when ordering disclosure would "endanger the safety and privacy of third parties." *August v. FBI*, 328 F.3d 697, 701 (D.C. Cir. 2003); *see also id.* ("The law does not require that third parties pay for the Government's mistakes.").

For the foregoing reasons, the district court's judgment is affirmed.

*So ordered.*

---

(D.C. Cir. 2005) (segregability does not apply if "there simply are no 'reasonably segregable' portions to release *after* deletion of the portions which are exempt." (ellipsis and some quotation marks omitted)).

In addition, Murphy's inadequate-search challenge fails because the adequacy of the search becomes a moot point if the requested information is in fact found but not disclosed. *See Blanton v. DOJ*, 64 F. App'x 787, 788–89 (D.C. Cir. 2003) (per curiam) (plaintiff's challenge to adequacy of search was "moot" when agency "found th[e] [requested] documents").