# IN THE SUPREME COURT OF CALIFORNIA

CITY OF GILROY,

Petitioner,

v.

THE SUPERIOR COURT OF SANTA CLARA COUNTY,

Respondent;

LAW FOUNDATION OF SILICON VALLEY,

Real Party in Interest.

S282937

Sixth Appellate District
H049552

Santa Clara County Superior Court
20CV362347

---

LAW FOUNDATION OF SILICON VALLEY,

Petitioner,

v.

THE SUPERIOR COURT OF SANTA CLARA COUNTY,

Respondent;

CITY OF GILROY,

Real Party in Interest.

S282950

Sixth Appellate District
H049554

Santa Clara County Superior Court
20CV362347

January 15, 2026

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Evans, and Stratton[*] concurred.

Justice Groban filed a concurring opinion, in which Justices Corrigan and Kruger concurred.

---

[*] Presiding Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CITY OF GILROY v. SUPERIOR COURT

S282937


Opinion of the Court by Guerrero, C. J.


"The California Legislature in 1968, recognizing that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state' [citation], enacted the California Public Records Act, which grants access to public records held by state and local agencies [citation]. . . . The act has certain specific exemptions [citation], but a public entity claiming an exemption must show that the requested information falls within the exemption." (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66–67 (*Long Beach Police Officers*).) In these consolidated appeals, we address two issues involving this statute. First, does the California Public Records Act (CPRA; Gov. Code, § 7920.000 et seq.) authorize a superior court to grant declaratory relief for violations of its provisions when it is undisputed that an agency has disclosed all existing records that are responsive to a records request and not exempt from disclosure?[1] Second, when an agency responds to a CPRA request by asserting that the requested records fall under a statutory exemption from disclosure, does the CPRA require that the agency retain the records for three years from the date the exemption is invoked?

---

[1] All further statutory references are to the Government Code unless otherwise stated.

As to the first issue, we conclude from the statutory text, considered in light of the CPRA's purpose of "increasing freedom of information" (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425 (*Filarsky*)), that declaratory relief under the CPRA is available in at least some circumstances in which all existing responsive, nonexempt records have been disclosed in response to a records request. An agency's disclosure of those records does not necessarily moot a request for declaratory relief that would "enforce that person's right under this division to inspect or receive a copy of any public record or class of public records." (§ 7923.000.) At a minimum, declaratory relief is available under the CPRA where the declaration would resolve an ongoing dispute regarding the parties' rights and obligations in a manner that has some likelihood of affecting future requests for public records or future conduct relating to such requests. We therefore reverse and remand for further proceedings consistent with this opinion insofar as the Court of Appeal construed the statute more narrowly as not providing "for declaratory relief other than to determine a public agency's obligation to disclose records." (*City of Gilroy v. Superior Court* (2023) 96 Cal.App.5th 818, 833 (*City of Gilroy*).)

As to the second issue, we agree with the Court of Appeal that the CPRA does not "impose a duty upon public agencies to preserve all documents responsive to a public records request that have been withheld as exempt" for a period of three years, commencing from when a public agency invokes a statutory exemption as a reason to withhold the records. (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 835.) The CPRA, an otherwise detailed statute, is silent regarding any preservation requirement, suggesting that no such requirement exists. And additional considerations — including the statute's legislative

history, the broad scope of the preservation obligation argued to exist, and the presence of retention requirements in other statutes, juxtaposed against the lack of any such direction here — counsel against recognizing this kind of implied preservation duty.

# I. BACKGROUND

## A. Factual Background

Plaintiff, the Law Foundation of Silicon Valley (the Law Foundation), is a nonprofit legal services organization. (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 823.) Beginning in fall 2018, "[a]fter receiving complaints from homeless persons that their personal property was being destroyed during cleanups of homeless encampments" that the Gilroy Police Department (GPD) assisted with, the Law Foundation filed a series of public records requests with the City of Gilroy (the City). (*Id.* at p. 825.)

The three requests submitted by the Law Foundation in October and November 2018 referenced enforcement actions that had been taken. For instance, one of the requests was for "[a]ny and all public records constituting, reflecting or relating to the Zero Tolerance Policy regarding the homeless and Quality of Life violations between January 1, 2015 through the present." None of these requests specifically mentioned footage captured by body-worn cameras (bodycam footage).

The City responded to the requests by releasing some records while withholding others. With respect to records relating to enforcement by the GPD, the City informed the Law Foundation that "[t]he GPD's law enforcement records generally, and Quality of Life criminal code enforcement records specifically, are exempt from disclosure under . . . [C]PRA"

section 7923.600.[2]  (See § 7923.600, subd. (a) ["this division does not require the disclosure of . . . investigations conducted by . . . any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes"].)  The Law Foundation did not object to the City's final responses to its 2018 public records requests.

In May 2019, the Law Foundation submitted another request, this time focusing specifically on the police department's bodycam recordings.  (See *City of Gilroy*, *supra*, 96 Cal.App.5th at p. 826.)  The City "subsequently provided some responsive materials with a June 11, 2019 letter from the assistant city attorney, which informed [the] Law Foundation that its request for GPD bodycam video footage from the homeless encampment sweeps was denied because the bodycam videos were exempt from disclosure." (*Ibid.*)

The Law Foundation objected to the City's 2019 response. On August 12, 2019, "the Law Foundation notified [the] City that it intended to file a petition for writ of mandate seeking a court order to compel [the] City to release GPD video and audio recordings of encampment sweeps occurring between January 1, 2016, through the present."  (*City of Gilroy*, *supra*,

---

[2]  The Legislature recently recodified the CPRA.  (See § 7920.005; Stats. 2021, ch. 614, § 2.)  The recodification, which took effect in January 2023, renumbered CPRA provisions but did not substantively change the law.  (See §§ 7920.100–7920.120.)  We refer to the current section numbers in the discussion below, cross referencing as necessary when discussing case law and other authorities that predate the recodification.

96 Cal.App.5th at p. 826.) "Due to [the] Law Foundation's stated intention of filing a writ petition to obtain release of the bodycam video footage, on August 22, 2019, GPD voluntarily placed a ' "litigation hold" ' on the footage to preserve it beyond the one-year retention period" mandated under the City's official retention policy. (*Ibid*.)

Although still contending that the bodycam footage was exempt from disclosure, the City "release[d] GPD bodycam video footage from encampment sweeps that did not relate to citations or arrests." (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 827.) The City represented that it did so "[t]o avoid dispute with the Law Foundation regarding the scope of applicable exemptions and to further accommodate its request for records." (See § 7921.500 ["Unless disclosure is otherwise prohibited by law, the provisions listed in Section 7920.505 [setting forth exemptions to the duty to disclose] do not prevent any agency from opening its records concerning the administration of the agency to public inspection"]; *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 652 ["exemptions are permissive, not mandatory"].) All released footage related to encampment cleanups that occurred in 2018 and 2019. The City withheld as exempt footage "that showed two encounters [in 2018] in which GPD officers issued citations." (*City of Gilroy*, at p. 827.) A trial court later ruled that "the exemption was valid and the footage was properly withheld." (*Ibid*.) That decision is not contested here.

The City also informed the Law Foundation that it had no other responsive, nonexempt records to disclose.[3] The City stated that all bodycam footage taken before early 2018 had been destroyed pursuant to the City's records retention policy, which required bodycam footage to be retained for only one year.[4]

## B. Procedural Background

In late 2020, the Law Foundation "filed a verified first amended petition for writ of mandate and complaint for equitable relief . . . alleging that [the] City had committed several violations of the CPRA" in handling its 2018 and 2019 records requests.[5] (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 827.) The Law Foundation alleged that, in contravention of

---

[3]    According to a declaration filed by counsel for the Law Foundation, the City only revealed in June 2020 that it had destroyed older bodycam footage after the Law Foundation had filed its initial complaint. Counsel stated the communication occurred during a "meet and confer" conference ordered by the court. In response, the City pointed out that its one-year records retention policy was adopted "at a publicly noticed meeting in February 2014," presumably suggesting the Law Foundation should already have been aware the older bodycam footage no longer existed.

[4]    Two records had not been destroyed, although they fell outside the one-year retention period. Those records showed "encounters by Gilroy police in which citations had been issued," and the records "had been flagged for retention, and therefore had been preserved beyond the one-year retention period in the Retention Policy." As noted above, the City withheld these records as exempt.

[5]    The initial complaint filed in January 2020 focused solely on the Law Foundation's 2019 records request and did not allege that the City violated the CPRA in responding to the 2018 requests.

the CPRA, the City "failed to search for responsive records, delayed searching for responsive records, improperly withheld responsive records, and destroyed responsive records while the Law Foundation's requests for those records were pending." The Law Foundation sought a writ of mandate directing the City to produce the subject records. The Law Foundation also prayed for a declaration of "the rights of the parties, including [the Law Foundation's] right to proper responses to its CPRA requests that comply with the time limits and rules for extensions set forth in the CPRA and that at the time of [the Law Foundation's] request, [the City of] Gilroy failed to produce responsive records that existed at the time and were subsequently destroyed."

The trial court granted the Law Foundation partial declaratory relief. Specifically, the court declared "(1) that the City violated the CPRA by conducting an inadequate search related to the Law Foundation's 2018 Public Records Act Requests"; "(2) with respect to the 2018 requests, the City had a duty to, but did not, watch the bodycam footage before asserting a blanket exemption when the details of the footage were unclear on their face in order to determine whether the exemption applies, separate the exempt and nonexempt material, if any, and share information derived from the exempt records with the requester as to why any withheld records were exempt rather than a boilerplate response that parrots the law"; and (3) the City's "response to the November 2018 CPRA request was not timely, occurring 33 days after the request was received."

By contrast, the trial court found no violations of the CPRA regarding the City's handling of the 2019 records request. The court also concluded that the CPRA did not impose a retention requirement and "the City did not violate the CPRA

by failing to preserve responsive records upon receipt of the Law Foundation's multiple 2018 and 2019 Public Records Act requests." The court also denied the request for a writ of mandate, ruling that the writ "does not lie to compel production of records." The court thus found, at least implicitly, that there were no other responsive, nonexempt records to produce.

Both parties appealed. The City argued that "the trial court erred in granting declaratory relief since the court did not order production of records and no additional responsive, nonexempt records can be produced." (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 831.) The Court of Appeal agreed, concluding that "the matter is moot and declaratory relief is not available under the circumstances of this case." (*Id*. at p. 832.) According to that court, " '[T]he CPRA provides *no* . . . remedy . . . that may be utilized for any purpose other than to determine whether a particular record or class of records must be disclosed.' " (*Ibid*., quoting *County of Santa Clara v. Superior Court* (2009) 171 Cal.App.4th 119, 127.) The court emphasized that "it is undisputed . . . [the] City has produced all responsive nonexempt GPD bodycam video footage in its possession." (*City of Gilroy*, at p. 833.) The court concluded that, as a result, it could not grant the Law Foundation "any effective relief under the CPRA," and the "Law Foundation's claims regarding the propriety of [the] City's past conduct in responding to [the] Law Foundation's public records requests are moot." (*Ibid*.)

The Court of Appeal rejected the Law Foundation's argument that the matter was "not moot because the trial court had broad authority to grant declaratory relief with respect to whether [the] City's past conduct in responding to [the] Law Foundation's public records requests violated the CPRA." (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 833.) The Court of Appeal

determined that "[s]ince the CPRA does not provide for declaratory relief other than to determine a public agency's obligation to disclose records, [the] Law Foundation may not seek declaratory relief under the CPRA with respect to the propriety of [the] City's past conduct in responding to [the] Law Foundation's public records requests." (*Ibid.*)

The Law Foundation, meanwhile, sought review of the trial court's ruling that the CPRA does not impose a records retention requirement. According to the Law Foundation, "[T]he CPRA should be broadly interpreted to impose a duty upon public agencies to preserve all documents responsive to a public records request that have been withheld as exempt for three years, pursuant to the three-year limitations period provided by Code of Civil Procedure section 338."[6] (*City of Gilroy, supra*, 96 Cal.App.5th at p. 835.) The Court of Appeal rejected this argument, reasoning that "the CPRA is not a records retention statute since the CPRA lacks any provisions pertaining to records retention." (*Id.* at p. 836.) The court perceived different provisions of the Government Code and the Penal Code as "provid[ing] the statutory retention periods" (*City of Gilroy*, at p. 836) applicable to the materials sought by the Law Foundation. (*Id.* at pp. 836–837, citing Gov. Code, §§ 34090, subd. (d) [providing that a city's records generally should not be destroyed "less than two years" from their date of creation], 34090.6, subd. (a) ["Notwithstanding the provisions of Section 34090, the head of a department of a city or city and

---

[6] Code of Civil Procedure section 338, subdivision (a) prescribes a period of three years for bringing "[a]n action upon a liability created by statute." Throughout this opinion, we assume, but do not decide, that this provision applies to actions brought under the CPRA.

county, after one year, may destroy recordings of routine video monitoring, and after 100 days may destroy recordings of telephone and radio communications maintained by the department"]; Pen. Code, § 832.18, subd. (b)(5) [specifying that "nonevidentiary data including video and audio recorded by a body-worn camera should be retained for a minimum of 60 days, after which it may be erased, destroyed, or recycled" while "[e]videntiary data including video and audio recorded by a body-worn camera under this section should be retained for a minimum of two years" under certain circumstances].)

The Court of Appeal acknowledged the Law Foundation's argument that unless it construed the CPRA as including a preservation requirement, "public records that are potentially responsive to a public records request may be deleted while the request is pending." (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 837.) The court ultimately found such concerns insufficient to overcome its interpretation of the statute. (*Id*. at pp. 837–838.)

## II. ANALYSIS

Both of the issues presented here involve a disagreement over how the CPRA should be interpreted. In statutory interpretation cases, "we begin by looking to the statutory language." (*National Lawyers Guild v. City of Hayward* (2020) 9 Cal.5th 488, 498 (*National Lawyers Guild*).) "We construe statutory language in the context of the statutory framework, seeking to discern the statute's underlying purpose and to harmonize its different components." (*Ardon v. City of Los Angeles* (2016) 62 Cal.4th 1176, 1183 (*Ardon*).) "If the language is clear in context, our work is at an end. If it is not clear, we

may consider other aids, including the statute's legislative history." (*National Lawyers Guild*, at p. 498.)

### A. Overview of the CPRA

"The Legislature enacted the CPRA in 1968. (Stats. 1968, ch. 1473, § 39, p. 2945.) It was modeled after the 1967 federal Freedom of Information Act (5 U.S.C. § 552). [Citation.] The CPRA explains that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' ([Former] § 6250 [now § 7921.000].) To promote this fundamental right, the CPRA provides that 'every person has a right to inspect any public record, except as hereafter provided.' ([Former] § 6253, subd. (a)[7].) 'In other words, all public records are subject to disclosure unless the Legislature has expressly provided to the contrary.'" (*American Civil Liberties Union Foundation v. Superior Court* (2017) 3 Cal.5th 1032, 1038–1039 (*American Civil Liberties Union*).)

"Proposition 59, a measure submitted to the voters in 2004, enshrined the CPRA's right of access in the state Constitution: 'The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.' (Cal. Const., art. I, § 3, subd. (b)(1), added by Prop. 59, as approved by voters, Gen. Elec. (Nov. 2, 2004).) The state Constitution implemented this right of access with the general directive that a 'statute,

---

[7] Former section 6253 is now section 7922.525, which is substantively the same. (See § 7922.525, subd. (a) ["every person has a right to inspect any public record, except as otherwise provided"].)

court rule, or other authority . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access.' (Cal. Const., art. I, § 3, subd. (b)(2).)" (*American Civil Liberties Union*, *supra*, 3 Cal.5th at p. 1039.) "In CPRA cases," therefore, "th[e] standard approach to statutory interpretation is augmented by [this] constitutional imperative." (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 617 (*City of San Jose*).)

"Although the CPRA provides for a broad right of access, it 'recognizes that certain records should not, for reasons of privacy, safety, and efficient governmental operation, be made public . . . .'" (*American Civil Liberties Union*, *supra*, 3 Cal.5th at p. 1039.) The CPRA thus provides for "numerous exceptions to the requirement of public disclosure." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329.) This includes the investigative exemption relied upon by the City in this case, which is intended to "protect . . . law enforcement's ability to effectively perform its duties." (*National Lawyers Guild*, *supra*, 9 Cal.5th at p. 493.)

The CPRA prescribes detailed procedures governing an agency's response to a public records request. These include the requirement that an agency, "upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefor." (§ 7922.535, subd. (a).) An agency is further required to "state the estimated date and time when the records will be made available" if the agency "determines that the request seeks disclosable public

records." (*Ibid.*)  The 10-day deadline may be extended only in specified "unusual circumstances" and, in any case, cannot "result in an extension for more than 14 days." (*Id.*, subd. (b).)[8]

Other provisions of the CPRA impose a general duty on agencies to act promptly.  (See, e.g., §§ 7922.500 ["Nothing in this division shall be construed to permit an agency to delay or obstruct the inspection or copying of public records"], 7922.530, subd. (a) ["Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees"].)

When an agency withholds a responsive record, the agency must "justify [its] withholding . . . by demonstrating that the record in question is exempt under express provisions of this division, or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 7922.000.)  When a record contains both exempt and nonexempt information, an agency must make a reasonable effort to segregate and redact the record so that "[a]ny reasonably segregable portion of a record shall be available for

---

[8]  As noted, the trial court found the City violated section 7922.535 by responding to the Law Foundation's November 2018 request "33 days after the request was received" instead of the maximum permitted 24 days.

inspection by any person requesting the record after deletion of the portions that are exempted by law." (§ 7922.525, subd. (b).)[9]

Most relevant here, the CPRA also "sets forth specific procedures for seeking a judicial determination" regarding an agency's compliance with its provisions. (*Filarsky*, *supra*, 28 Cal.4th at p. 426.) Section 7923.000 allows a person to "institute a proceeding for injunctive or declaratory relief, or for a writ of mandate, in any court of competent jurisdiction, to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records." Pursuant to section 7923.100, "Whenever it is made to appear, by verified petition to the superior court of the county where the records or some part thereof are situated, that certain public records are being improperly withheld from a member of the public, the court shall order the officer or other person charged with withholding the records to disclose those records or show cause why that person should not do so." (See also § 7923.110 [stating that a court shall "make [a] record public" or "return the record . . . without disclosing its content" depending on whether the court finds that the decision to refuse disclosure was justified]; *Filarsky*, at pp. 426–427 [discussing other aspects of judicial review under the CPRA, including appellate procedures].)

---

[9]    Here, the trial court found that the City failed to "separate the exempt and nonexempt material, if any, and share information derived from the exempt records with the requestor as to why any withheld records were exempt rather than a boilerplate response that parrots the law."

### B. Availability of Declaratory Relief Under the CPRA

The first issue before us concerns the scope of declaratory relief available under the CPRA. The Law Foundation contends that the declaratory relief authorized by section 7923.000 sweeps broadly. It perceives an extensive array of declarations addressing whether a public agency's past actions violated the CPRA as appropriate "to enforce" a requester's right "to inspect or receive a copy of any public record or class of public records." (§ 7923.000.) The Law Foundation reasons that declaratory relief addressing the lawfulness of an agency's past conduct may function "to enforce" these rights by deterring future unlawful conduct, even if no particularized circumstances suggest that the challenged conduct is likely to recur. (*Ibid.*)

The City advances a much narrower interpretation of section 7923.000. According to the City, section 7923.000 places "a limitation on declaratory relief to whether there is a duty to disclose particular records." In other words, in the City's view the declaratory relief available under the statute is limited to an agency's ongoing responsibilities to disclose existing records in response to a pending request. In making this argument, the City stresses that sections 7923.100 and 7923.110 empower the courts to compel production of only "certain public records" (§ 7923.100) or to "make . . . public" specific records (§ 7923.110, subd. (a)). In the City's view, "the CPRA does not authorize declaratory relief specifying whether a records search was inadequate or should have been done in a particular manner, or whether an agency's initial response . . . was allegedly late by a few days, or whether an automatic document deletion schedule should have been halted once an agency received a CPRA request."

We agree with the Law Foundation that the CPRA authorizes declaratory relief in at least some circumstances in which an agency already has disclosed all nonexempt records responsive to a records request. Without attempting to delineate all circumstances in which declaratory relief may be available under the CPRA, we conclude that, at a minimum, declaratory relief is appropriate in situations in which an agency is reasonably likely to repeat past conduct that allegedly violates the CPRA in response to future records requests. It is apparent here that the first two of the trial court's declarations, which concerned the City's responses to public records requests involving bodycam footage captured by law enforcement, addressed contested issues regarding the City's handling of records requests that were sufficiently likely to recur; declaratory relief is appropriate in these circumstances to help guide the parties' future conduct and inform their rights and responsibilities under the CPRA.

1. *Statutory text*

Section 7923.000 provides that "[a]ny person may institute a proceeding for injunctive or declarative relief, or for a writ of mandate, in any court of competent jurisdiction, to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records."

This language reveals some basic flaws with the City's interpretation. The City argues that declaratory relief under the CPRA is restricted to whether a requester is entitled to certain records, or classes of records, that have not yet been made available by an agency. But the statute does not set out any such limitation. It refers more generally to enforcing a "person's right under this division to inspect or receive a copy of

any public record or class of public records." (§ 7923.000.) This language is reflective of a more expansive use of declaratory relief to vindicate the broader right to inspect or receive records, including in response to a pending request or one that might be made in the future. Furthermore, under the City's reading, the declarations authorized by section 7923.000 would be limited to declarations that a requester is entitled to certain records or classes of records, notwithstanding the fact that courts could already order the production of those records under sections 7923.100 and 7923.110.

Contrary to the City's position that no effective relief can be provided under the circumstances of this case, it is not difficult to see how a declaration could "enforce" a right to public records. (§ 7923.000; see Black's Law Dict. (4th ed. 1968) p. 621, col. 2 [defining "enforce" as "[t]o put into execution," "to cause to take effect," "to make effective," or "to compel obedience to"]; Webster's 3d New Internat. Dict. (1961) p. 751, col. 2 [defining "enforce" as to "compel" or "cause to take effect" (capitalization omitted)]; accord, *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 347 [in construing a statute, relying on the dictionary meaning of the word "enforce" and stating "the word 'enforce' is defined as to 'give effect to' "].) Most obviously, at least when there is an ongoing dispute between the parties, a declaration of rights and responsibilities could avoid the recurrence or continuation of assertedly unlawful conduct that frustrates a "person's right under this division to inspect or receive a copy of any public record or class of public records." (§ 7923.000.) An interpretation of the statute as concerned with such practices would harmonize with case law explaining that declaratory relief is available under Code of Civil Procedure sections 1060 and 1061 to resolve uncertainties

regarding legal duties and past conduct that might be perpetuated absent a judicial declaration. (See, e.g., *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 (*City of Cotati*) [a plaintiff can generally seek " 'declaratory relief . . . when the parties . . . dispute whether a public entity has engaged in conduct or established policies in violation of applicable law' "]; *Bess v. Park* (1955) 132 Cal.App.2d 49, 52 [declaratory relief is available "to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation"]; *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 729 ["The purpose of a declaratory judgment is 'to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation' "].)

As noted, the Law Foundation interprets the declaratory relief provision under the CPRA more expansively as generally allowing for declarations based solely on prior conduct by an agency even without any further indication that this conduct might recur.[10] We do not have to decide here all of the circumstances for which declaratory relief under the CPRA may be available. As previously recited, the trial court issued three declarations — the first declaring that the City violated the CPRA by conducting an inadequate search for records; the second declaring that the City breached various duties in asserting an exemption for bodycam footage sought by the Law

---

[10] In advancing this interpretation of the statute, the Law Foundation has conceded some possible limits to the declaratory relief available under the CPRA. Among them, at oral argument counsel for the Law Foundation took the position that the CPRA allows for a declaration regarding an agency's belated production of records only when that untimeliness "deprived a requester of their constitutionally protected rights."

Foundation; and the third declaring that the City's response to the November 2018 request was untimely, "occurring 33 days after the request was received." The first and second of these declarations were appropriate regardless of whether, when past conduct is at issue, the CPRA's declaratory relief provision is limited to circumstances in which this conduct has some likelihood of recurring. Both of these declarations addressed contested claims regarding the City's alleged responsibilities under the CPRA, given the City's consistent view concerning the CPRA's application to certain bodycam recordings that it continues to generate. Declaratory relief was appropriate to provide guidance to the parties and resolve their ongoing disputes. We decline to address the third declaration and whether it would have supported an action for declaratory relief if raised in isolation. Given the existence here of other, valid subjects of declaratory relief, we need not evaluate this declaration regarding the timeliness of agency responses in order to answer the legal question before us.[11]

### 2. *Purpose and constitutional mandate*

Our construction of the statute is also supported by the CPRA's overarching purpose and the constitutional mandate that a "statute . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2).)

---

[11]    Upon remand, the Court of Appeal can consider whether the trial court's third declaration is authorized under the CPRA, assuming the parties wish to further pursue the matter in light of the concession made by the Law Foundation.

The CPRA "was enacted for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies." (*Filarsky*, *supra*, 28 Cal.4th at p. 425.) Even in circumstances in which all records responsive to a specific request have been produced or destroyed, declarations that function to guide the parties' conduct, resolve ongoing disputes, and facilitate future inspection or receipt of records "increas[e] freedom of information" (*ibid.*) and "further[] the people's right of access" (Cal. Const., art. I, § 3, subd. (b)(2)).

This is true even though, as the Law Foundation acknowledges, "a declaratory judgment cannot bring back records that a public agency has already destroyed." Notwithstanding such destruction, a declaration of whether challenged policies and practices comport with the statute furthers the statute's goals insofar as the declaration clarifies whether the challenged policies or practices are permissible under the statute. Such clarifications will then assist agencies in fulfilling their obligations in responding to future public records requests.

Conversely, adopting the City's position would create a heightened risk of limiting access to public records in the manner provided by statute. Under the City's approach, an agency's full production of records *after* the requester files suit would categorically preclude any declaratory relief even in situations involving repeated stonewalling or other policies or practices that hinder or frustrate the exercise of rights conferred under the CPRA. We avoid this construction of the CPRA in light of "the public's presumptive right of access [citation], and the constitutional imperative to broadly construe this right." (*City of San Jose*, *supra*, 2 Cal.5th at p. 624; see *Judicial Watch,*

20

*Inc. v. U.S. Dept. of Homeland Sec.* (D.C. Cir. 2018) 895 F.3d 770, 780 ["Our precedent on policy or practice claims disposes of any suggestion that Congress intended the repeated filing of lawsuits to be a practical requirement for obtaining records from an agency flaunting the statute"].)

### 3. *Case law*

No court has directly answered the question of whether the CPRA authorizes a superior court to grant declaratory relief for violations of its provisions when it is undisputed that all existing responsive, nonexempt records have been disclosed. Nonetheless, the interpretation of the CPRA that we adopt is consistent with other judicial decisions addressing similar issues under state and federal law.

In *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385 (*Community Youth*), the plaintiff submitted public records requests to the City of National City (National City) in connection with the city's plans to redevelop areas within its borders "based on certain designations of physical and economic blight." (*Id.* at p. 1394.) The plaintiff sued under the CPRA when National City failed to produce "certain documents about . . . two types of underlying raw data" that had been requested. (*Community Youth*, at p. 1396.) As it turned out, National City did not disclose these raw data because it no longer had them. Some of the data were misplaced, and some had been lost because National City's consultant "routinely purged its records." (*Id.* at p. 1403.) Ruling in the plaintiff's favor, the trial court "issued declaratory relief on the ground that the City had violated the [C]PRA, by failing to produce at the request of [the plaintiff] certain

21

documents . . . which the City had used to justify its blight claims." (*Id.* at p. 1396.)

The Court of Appeal affirmed, concluding that "[t]he trial court's declaratory relief that there had been violations of the [C]PRA was justified." (*Community Youth, supra,* 220 Cal.App.4th at p. 1429.) As the Court of Appeal stated, "No bad faith finding was required to support the finding there was a [C]PRA violation." (*Id.* at p. 1428.) National City violated the CPRA because in its search for records, it "gave up too soon and did not press the matter sufficiently, to a reasonable extent, at a time when most of the [underlying raw data] . . . still existed." (*Community Youth,* at p. 1428.) The court further concluded that the plaintiff might qualify for an attorney fee award because it "sought and obtained declaratory relief that there had been [C]PRA violations" (*id.* at p. 1447) even though "the subject requested records were never produced" (*id.* at p. 1446).

*Community Youth* is analogous to the case before us in several aspects. In *Community Youth*, as here, requested records had been lost because of a routine records deletion. Like the instant matter, there did not appear to be any contention that the lost records in *Community Youth* could still be produced. Despite that circumstance, the Court of Appeal affirmed the trial court's ruling declaring that National City violated the CPRA because it failed to properly respond to the plaintiff's public records request.

The Court of Appeal below found *Community Youth* to be "distinguishable" — a contention the City echoes. (*City of Gilroy, supra,* 96 Cal.App.5th at p. 834.) According to the court, "no issue was raised in *Community Youth* . . . regarding whether the public records requests were moot or whether declaratory

22

relief was authorized under the CPRA." (*Id.* at pp. 834–835.) It therefore concluded that *Community Youth* "does not support [the] Law Foundation's contention that a trial court has broad authority to grant declaratory relief regarding the propriety of a city's past acts in responding to public records requests under the CPRA where, as here, a public agency's obligation to disclose public records is not at issue." (*Id.* at p. 835.)

It is true that the reviewing court in *Community Youth* did not specifically address mootness. Nonetheless, it upheld the trial court's grant of declaratory relief while fully cognizant that the requested records were lost and "never produced." (*Community Youth*, *supra*, 220 Cal.App.4th at p. 1446.) Moreover, like the plaintiff in *Community Youth*, the Law Foundation contends that the City was obligated to locate and disclose the requested records "at a time when most of the [documents] still existed." (*Id.* at p. 1428.) The City's "obligation to disclose public records" thus underpins the Law Foundation's claim here, just as a similar duty formed the basis for the plaintiff's claim in *Community Youth*. (*City of Gilroy*, *supra*, 96 Cal.App.5th at p. 835.) While we express no view regarding whether the court in *Community Youth* reached the right result under the circumstances of that case, its reasoning suggests that courts have not generally understood the CPRA's declaratory relief provision in the limited manner that the City suggests.

The Court of Appeal's decision in *Cook v. Craig* (1976) 55 Cal.App.3d 773 (*Cook*) also demonstrates how declaratory relief may enhance the right to access public records even when a complete disclosure has been made in circumstances where, as here, an agency produces requested records without conceding an obligation to do so. The plaintiffs in *Cook* sought "pursuant

to the Public Records Act [citation] . . . to be allowed to inspect and make copies of the rules and regulations of the California Highway Patrol (CHP) governing the investigation and disposition of citizens' complaints of police misconduct." (*Id*. at p. 777, fn. omitted.)  The trial court sustained a demurrer to the complaint, ruling that the CPRA "does not compel disclosure of the CHP's procedure for investigating citizen complaints." (*Id*. at p. 778.)

The plaintiffs appealed.  While their litigation was pending, the Attorney General informed the plaintiffs that the CHP had been persuaded to make complaint investigation procedures available due to " 'a new legislative policy favoring availability of information concerning the manner in which law enforcement agencies handle complaints against their personnel.' " (*Cook*, *supra*, 55 Cal.App.3d at p. 779.)

Despite the CHP's new policy, the Court of Appeal was not convinced that the lawsuit had been rendered moot.  As the court reasoned, a "defendant's unilateral decision to disclose its complaint investigation procedures is also unilaterally rescindable," and "[g]iven the position of defendant that it has no legal obligation to disclose these procedures, and its voluntary disclosure only after litigation was commenced, we cannot say that the dispute will not recur." (*Cook*, *supra*, 55 Cal.App.3d at p. 780.)  The court therefore held that "voluntary disclosure does not resolve plaintiffs' action for 'declaratory relief' as to whether the procedures are required to be disclosed under the [C]PRA." (*Ibid*.; see also, e.g., *Gray Media Grp., Inc. v. City of Charlotte* (N.C. 2023) 892 S.E.2d 629, 636; *Spokane Research v. City of Spokane* (Wash. 2005) 117 P.3d 1117, 1124.)

Before turning to federal case law, we note that the federal Freedom of Information Act (FOIA; 5 U.S.C. § 552 et seq.), like the CPRA, provides a mechanism for records requesters to seek judicial review. Unlike the CPRA, the federal law does not expressly provide for declaratory relief. Instead, courts have granted such relief under "courts' equitable powers in enforcing [the FOIA's] terms." (*Payne Enterprises, Inc. v. U.S.* (D.C. Cir. 1988) 837 F.2d 486, 494 (*Payne*) [citing *Renegotiation Bd. v. Bannercraft Clothing Co.* (1974) 415 U.S. 1, 19–20].)

In interpreting the CPRA, we are not bound by decisions interpreting the FOIA. Nonetheless, they remain informative insofar as they reveal that courts interpreting the federal law have recognized the availability of declaratory relief in certain circumstances, even when all records responsive to a request have been produced. (See, e.g., *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1338 (*Times Mirror*) ["judicial construction of the FOIA . . . 'serve[s] to illuminate the interpretation of' " the CPRA]; *American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 451 [finding parallel construction of the two statutes appropriate with respect to the question presented and circumstances of the case]; cf. *Williams v. Superior Court* (1993) 5 Cal.4th 337, 351–354 [clarifying that a general sensitivity to judicial construction of the FOIA does not mean the CPRA and FOIA should be interpreted as imposing the same requirements in all instances].)

Here, both parties rely on *Hajro v. U.S. Citizenship and Immigration Services* (2016) 811 F.3d 1086 (*Hajro*), a federal case addressing when FOIA claims become moot. In *Hajro*, the Ninth Circuit Court of Appeals stated that there are "two separate claims that complainants can bring against an agency

under FOIA." (*Hajro*, at pp. 1102–1103.)  The first type of claim is "a suit where a plaintiff attacks a specific agency action for (1) 'improperly' (2) 'withheld' (3) 'agency records.' " (*Id.* at p. 1103.)  For this type of claim — referred to as "specific FOIA request claims" — the court determined that "after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied." (*Ibid.*) The City relies on this language to support its position that the Law Foundation's claim is moot and no declaratory relief could be granted.

By contrast, the Law Foundation focuses on the next part of *Hajro*'s discussion, in which the Ninth Circuit elaborated upon the second type of FOIA claim that may be brought.  The court stated: "A FOIA requester may also assert a FOIA pattern or practice claim — a 'claim that an agency *policy or practice* will impair the party's lawful access to information in the future.' " (*Hajro, supra*, 811 F.3d at p. 1103.)  Because this type of alleged FOIA violation is not "merely an isolated incident," "a pattern or practice claim is not necessarily mooted by an agency's production of documents." (*Hajro*, at p. 1103; see also, e.g., *Animal Legal Defense Fund v. U.S. Dept. of Agriculture* (9th Cir. 2019) 935 F.3d 858, 874 ["policy or practice claims stem from an agency's policy of violating FOIA rather than from the results of a particular request  . . . .  [A]n agency cannot moot a pattern or practice claim by providing the requested documents"]; *Newport Aeronautical Sales v. Dept. of the Air Force* (D.C. Cir. 2012) 684 F.3d 160, 164 [" 'even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's

26

lawful access to information in the future'" (some italics omitted)].)

*Hajro*'s discussion regarding a pattern and practice claim follows a line of precedents that began with *Payne*. In *Payne*, a requester, Payne Enterprises, Inc. (Payne), was frustrated when "officers at Air Force Logistics Command ('AFLC') bases refused to supply [it] with copies of bid abstracts . . . . The base officers perfunctorily invoked FOIA Exemptions . . . in justifying their denials. Payne appealed these denials to the Secretary of the Air Force, who without exception ordered disclosure . . . . Nevertheless, AFLC officers continued to refuse Payne's FOIA requests for bid abstracts, thereby necessitating further — and invariably successful — administrative appeals. The delay occasioned by these appeals injured Payne's business by frustrating its clients' desire for the prompt delivery of information on contract bids." (*Payne, supra,* 837 F.2d at p. 487.) Payne eventually filed suit "challenging the Air Force's practice of unjustified delay and seeking declaratory and injunctive relief to compel the defendants to release abstracts of negotiated acquisitions." (*Ibid.*) "Payne's suit was dismissed, however, on the ground that it had received all of the material it had requested through the administrative appeals procedure specified by the FOIA." (*Id.* at p. 488.)

On appeal, the Court of Appeals concluded that the district court had abused its discretion in denying Payne equitable relief. (*Payne, supra,* 837 F.2d at p. 494.) The appellate court reasoned, "For almost two years, officers at AFLC bases refused to fulfill Payne's requests for copies of bid abstracts . . . , thus forcing Payne to seek administrative review. In *every* case, the Secretary of the Air Force released the information Payne requested. . . . The AFLC officers, however,

continued to deny Payne's requests, and the Secretary refrained from taking firm action to end their recalcitrance. The Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification, entitle Payne to declaratory relief." (*Id.* at p. 494.) The Court of Appeals thus reversed and directed the district court to enter declaratory judgment in favor of Payne. (*Id.* at p. 495.)

In short, *Payne* involved an agency's egregious noncompliance with federal records disclosure law that continued notwithstanding the requester's repeated resort to internal agency remedies. The requester sought a judicial declaration that the complained-of conduct was unlawful, and the Court of Appeals agreed declaratory relief was appropriate under the circumstances. The City's interpretation of the CPRA would reach the opposite result here, rejecting any claim for declaratory relief under the statute if the requesting party "had received all of the material it had requested." (*Payne, supra,* 837 F.2d at p. 488.) We reject such an interpretation as inconsistent with the CPRA's text, read in light of its animating purposes.

### 4. *Countervailing policy arguments*

The City also invokes public policy concerns in support of its interpretation. (Accord, *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 290 [" 'To the extent [an] examination of the statutory language leaves uncertainty, it is appropriate to consider "the consequences that will flow from a particular interpretation" ' "].) The City's primary contention is that the Law Foundation's construction will encourage strategic

litigation. The City notes that the CPRA requires a public agency to pay "court costs and reasonable attorney's fees to the requester" "[i]f the requester prevails in litigation filed pursuant to [the CPRA]." (§ 7923.115, subd. (a).) Based on this, the City argues that "[t]o permit claims for declaratory relief based on some alleged technical violation of the CPRA such as a delayed initial response, even where an agency has otherwise fully complied with a request and produced appropriate records, would generate litigation meant not to enforce a right to view public records, but solely to recover attorney's fees."

We find the City's policy arguments unpersuasive. First, the City's position assumes that affirmative declaratory relief and attorney fees are available in response to merely "technical" violations of the statute. While future cases may present that question, as previously discussed we need not interpret the statute so expansively in order to resolve the case before us. Our narrower holding today — that the statute allows for declaratory relief at least when it functions to address an ongoing dispute and guide the parties' future conduct with respect to the parties' rights and responsibilities under the CPRA — should not threaten the tidal wave of litigation that the City forecasts.

There are also limits regarding the availability and size of attorney fees under the CPRA. An award of fees is authorized by statute only "[i]f the requester prevails in litigation" (§ 7923.115, subd. (a)), and those that bring "clearly frivolous" cases are required to pay "court costs and reasonable attorney's fees to the public agency" (*id.*, subd. (b)). In addition, a court is obligated to award only "*reasonable* attorney's fees" to a prevailing requester. (*Id.*, subd. (a), italics added.) If the court concludes that a requester engaged in unreasonable litigation

29

tactics in order to recover attorney fees, the court may take this into consideration in determining what constitutes a reasonable fee award. (See, e.g., *Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 654 [stating that a trial court "determine[s] whether the fees sought by the prevailing party are reasonable in light of the work required to be done and, if not, . . . fix[es] an amount that is reasonable. . . . 'The requirement that such fees be reasonable should adequately safeguard against an excessive award' "].) In other words, insofar as our ruling raises concerns about the amount of attorney fees, a court is not statutorily obligated to award fees in the amount requested by prevailing counsel.[12]

For the reasons provided above, we hold that the CPRA authorizes declaratory relief that a public agency has violated its provisions even in some circumstances when it is uncontested that there are no existing nonexempt records to disclose. Under any reasonable interpretation of the statute, at least two of the declarations rendered by the trial court below were permissible because they resolve an ongoing dispute about the parties' respective statutory rights and obligations and thus serve to guide their future conduct. We do not address the third

---

[12] Agencies, too, have some degree of control over the amount of attorney fees that may be reasonably incurred. In this case, for example, it has been argued that the City might have successfully limited the scope of litigation by informing the Law Foundation at an earlier point in time that it no longer possessed certain bodycam footage the Law Foundation seeks. As the Law Foundation alleged in the operative complaint, it was "[b]ecause [the City] continued to assert that it was withholding records under the investigative exemption rather than disclosing that the records no longer existed, the Law Foundation was forced . . . to file a writ petition to enforce its rights under the CPRA."

declaration, concerning the untimeliness of the City's response. Nor do we reach the parties' other contentions regarding the availability of declaratory relief. In particular, we express no view as to the Court of Appeal's holding that the declaratory relief granted by the trial court here was unauthorized under Code of Civil Procedure section 1060. (Compare *City of Gilroy*, *supra*, 96 Cal.App.5th at pp. 833–834 with *City of Cotati*, *supra*, 29 Cal.4th at p. 79.)

## C. Retention Obligation Under the CPRA

As to the second issue presented, we reject the Law Foundation's claim that the CPRA imposes a retention period of three years commencing from the time an agency asserts an exemption to withhold records. We base this conclusion on several grounds. First, the CPRA's text does not include a retention obligation, an omission that is particularly noteworthy given how detailed the statute is and the improbability of legislation by implication on this subject. Second, the CPRA's legislative history indicates that the Legislature did not perceive it as imposing a retention requirement. Third, the presence of retention periods in other statutes applicable to records commonly sought through CPRA litigation, and the penalties for spoliation in the litigation context, assuage concerns about the absence of a retention obligation and reinforce the conclusion that the failure to include a preservation requirement in the CPRA was intentional.

### 1. *Statutory text*

Although "the CPRA describes its procedures and exceptions 'in exceptionally careful detail' " (*Haynie v. Superior Court* (2001) 26 Cal.4th 1061, 1073 (*Haynie*)), none of its provisions specifically requires a public agency to retain any

31

record under any particular circumstance. The only time the CPRA addresses record preservation is within section 7921.010, a provision that prohibits agencies from avoiding their obligations under the statute by transferring public records to private entities. And far from requiring any sort of retention, that provision states that "[n]othing in this section prevents the destruction of a public record pursuant to law." (§ 7921.010, subd. (c).)

The absence of any retention requirement within the CPRA suggests that no such requirement exists. (Accord, *Long Beach Police Officers*, *supra*, 59 Cal.4th at p. 72 [concluding that "silence" on the part of a statute "is important"].) It would be highly unusual for the Legislature to have intended for this court not only to infer a retention requirement within the statutory scheme but also to devise all of the details necessary to make such a requirement coherent, such as when a duty would be triggered and when it would terminate.

Our own precedent supports this conclusion. In *Haynie*, we held that the CPRA does not require a public agency to "create a list and description of documents withheld" prior to litigation. (*Haynie*, *supra*, 26 Cal.4th at p. 1074.) We first noted that the CPRA "contains no . . . provision describing an agency's duty to create a log of documents exempt from disclosure." (*Haynie*, at p. 1073.) We also observed that such a duty "has the potential for imposing significant costs on the agency." (*Id.* at p. 1074.) We thereafter declined to read such a duty into the CPRA. (*Haynie*, at p. 1075.) We likewise hold in the present case that a preservation duty does not exist under the CPRA.

In urging us to reach a different conclusion, the Law Foundation contends that its proposed records retention requirement derives from the CPRA's judicial review provisions, including sections 7923.000, 7923.100, 7923.105,[13] and 7923.110. The Law Foundation reasons that "[t]he necessary implication of these statutory provisions is that the withheld records will be preserved long enough for a court to independently review the public agency's reasons for withholding the records."

We are unpersuaded that by providing for judicial oversight in the CPRA, the Legislature intended to require the retention of records for three years, commencing with the assertion of a statutory exemption. In essence, the Law Foundation's argument is that the CPRA imposes a records retention requirement because the CPRA allows for litigation. But if litigation is what justifies preservation, then it seems unlikely that the Legislature intended for broad preservation of potentially responsive public documents given that, as the parties here agree, public records requests rarely result in litigation.

The breadth of the Law Foundation's proposed records retention requirement further undermines its position that the Legislature intended such a requirement by way of inference. Taken to its logical end, this requirement could result in agencies having to retain all records indefinitely. Consider, for example, a scenario in which a requester asks an agency to

---

[13] In relevant part, section 7923.105 reads, "The court shall decide the case after the court does all of the following: [¶] (a) Examine the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code."

produce "all records" and the agency states that it will not be releasing "all records" because "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."  (§ 7922.00; accord, *Times Mirror, supra,* 53 Cal.3d at p. 1345 ["whatever merit disclosure might otherwise warrant in principle is simply crushed under the massive weight of the . . . request in this case"].)  Having relied on this catchall exemption, the agency would be obligated, under the Law Foundation's reading, to retain all records for a period of three years.  On the eve of the expiration of that period, the requester could again ask for all records, and the agency would presumably be required to retain all its records for another three years.  We are "not persuaded that any identifiable public interest supports such a wholesale [retention] of documents."  (*Times Mirror*, at p. 1345; see also *Ardon, supra,* 62 Cal.4th at p. 1189.)

We therefore conclude that had "the Legislature . . . intended to" include a records retention requirement within the CPRA, " 'it would have been done . . . more clearly and explicitly.' "  (*Rodriguez v. FCA US LLC* (2024) 17 Cal.5th 189, 199; accord, *People v. Strong* (2022) 13 Cal.5th 698, 715 [referencing the "no-elephants-in-mouseholes canon"].)

### 2. *Legislative history*

The Law Foundation's reading of a retention requirement into the statute is also inconsistent with the CPRA's legislative history.  Our review of this history reveals one discussion of a retention requirement in connection with the CPRA's initial enactment — in which the author of the measure through which the CPRA was enacted (Assem. Bill No. 1381 (1968 Reg. Sess.)) expressly stated that the statute *did not* contain such a

requirement. The author received unanimous consent to include a statement by him in the Assembly Journal for August 2, 1968 — the day the bill received final approval in the Assembly. The statement provided in relevant part, "In order to indicate more fully its intent with respect to AB 1381, the Assembly Judiciary Committee and the author make the following statement: [¶] The intent of AB 1381 is to enact a comprehensive law relating to disclosure of public records, *and not to affect the provisions of existing law in regard to the destruction of public records*." (4 Assem. J. (1968 Reg. Sess.) p. 7150, italics added.)[14] This statement of the intent behind the bill corroborates our assessment that the statute does not include a retention requirement.

### 3. *Other remedies and statutes*

Because the Law Foundation is not arguing that the CPRA imposes an obligation on agencies to institute litigation holds,[15] it is unnecessary to extensively explore that issue here.

---

[14] The author's statement also provided, "The Assembly Judiciary Committee intends to give further consideration to revision of the law relating to destruction and retention of records during the 1969 general session of the Legislature and appropriate recommendations will be made at that time." (4 Assem. J., *supra*, at p. 7150.) Express legislation to govern the "destruction and retention of records" under the CPRA did not materialize in 1969 or thereafter, however. (4 Assem. J., *supra*, at p. 7150.)

[15] A litigation hold describes "[t]he duty to preserve relevant evidence [that] is triggered when the party is objectively on notice that litigation is reasonably foreseeable, meaning litigation is probable and likely to arise from an incident or dispute and not a mere possibility." (*Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1133.)

Nonetheless, we observe that statutes other than the CPRA already create preservation duties relating to litigation and other retention requirements that help to assuage any concerns regarding the possible destruction of records while a CPRA request is pending.

For example, in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 (*Cedars-Sinai*), we examined statutes that prohibit and penalize the destruction of evidence relevant to litigation, including Code of Civil Procedure section 2023.010 (Code Civ. Proc., former § 2023). As we explained, "Destroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the [prohibition] of [Code of Civil Procedure] section 2023[.010], as would such destruction in anticipation of a discovery request." (*Cedars-Sinai*, at p. 12.) Not only would "destruction in anticipation of a discovery request" violate the law, but it would also draw "potent" "sanctions under Code of Civil Procedure section 2023[.010]." (*Ibid.*) Our decision in *Cedars-Sinai* also discussed other provisions of law that deter the spoliation of

evidence, such as Evidence Code section 413[16] and Penal Code section 135.[17] (*Cedars-Sinai*, at pp. 11, 13.)

Thus, to the extent that the Law Foundation is concerned that CPRA provisions authorizing judicial oversight "would be frustrated if a public agency can thwart judicial review of its decision to withhold records by destroying those records in the ordinary course, even after the agency is on notice that the requesting party disagrees with the agency's justification for withholding," those concerns are already addressed in the law, at least when litigation is reasonably foreseeable. (See, e.g., *Cedars-Sinai*, *supra*, 18 Cal.4th at pp. 11–12.) It is not necessary to infer that the CPRA itself imposes a preservation obligation in these circumstances.[18]

---

[16] Evidence Code section 413 states that "[i]n determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case." The provision thus creates an "evidentiary inference that evidence which one party has destroyed or rendered unavailable was unfavorable to that party." (*Cedars-Sinai*, *supra*, 18 Cal.4th at p. 11.)

[17] Penal Code section 135 states, "A person who, knowing that any book, paper, record, instrument in writing, digital image, video recording owned by another, or other matter or thing, is about to be produced in evidence upon a trial, inquiry, or investigation, authorized by law, willfully destroys, erases, or conceals the same, with the intent to prevent it or its content from being produced, is guilty of a misdemeanor."

[18] The Legislature also recently enacted Penal Code section 832.5. This provision specifies procedures for investigation of complaints against law enforcement personnel. In relevant

We also agree with the Court of Appeal that the existence of other retention statutes counsels against finding an implicit retention requirement in the CPRA. These statutes (which postdate the CPRA) impose minimum retention periods for categories of records that capture materials the Law Foundation sought from the City in this case. (See §§ 34090, subd. (d) [excepting "[r]ecords less than two years old" from a general authorization to destroy city records], 34090.6, subd. (a) ["Notwithstanding the provisions of Section 34090, the head of a department of a city or city and county, after one year, may destroy recordings of routine video monitoring, and after 100 days may destroy recordings of telephone and radio communications maintained by the department"]; Pen. Code, § 832.18, subd. (b)(5)(A) [stating that data recorded by a body-worn camera "should be retained for a minimum of 60 days[, or longer under specified circumstances], after which it may be erased, destroyed, or recycled"].)

These statutes are relevant here in a few respects. First, they demonstrate that the Legislature *has* imposed express retention requirements in other contexts, making the absence of any such requirement in the CPRA all the more notable. (See, e.g., *In re Jennings* (2004) 34 Cal.4th 254, 273 [" 'where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning

---

part, it provides, "A record [e.g., complaints and any reports or findings relating to these complaints] shall not be destroyed while a request related to that record is being processed or any process or litigation to determine whether the record is subject to release is ongoing." (Pen. Code, § 832.5, subd. (b).) The Legislature has thus expressly required a hold for certain types of records.

a related subject is significant to show that a different legislative intent existed with reference to the different statutes' "].) Second, these statutes provide for the retention of certain public records for specified minimum periods of time. Although these timeframes are shorter than the three-year retention period urged by the Law Foundation, they nevertheless provide the public with an understanding of when a records request seeking covered records must be presented to an agency, tempering concerns that agencies might frustrate a public records request through the immediate destruction of records. Third, none of these statutes suggests that the CPRA might require the retention of records that could otherwise be destroyed, a shared omission that, again, suggests that the CPRA does not impose any such requirement. (See, e.g., *People v. Frahs* (2020) 9 Cal.5th 618, 634.)[19]

---

[19]    Penal Code section 832.18, enacted just over a decade ago, does mention the CPRA. (See Pen. Code, § 832.18, subd. (d) ["This section shall not be interpreted to limit the public's right to access recorded data under the California Public Records Act"].) This reference, however, does not allude to any preservation requirement. The history of the enacting legislation confirms that it is concerned with the CPRA's disclosure requirements, rather than any duty to retain records. (See, e.g., Assem. Com. Privacy & Consumer Protection, Analysis of Assem. Bill No. 69 (2015–2016 Reg. Sess.) as amended Apr. 21, 2015, pp. 2, 4 [discussing the CPRA, stating that it "requires" "public agencies [to] disclose a government record to the public upon request" and mentioning various facets of the law, but without suggesting any retention requirement].) In short, the Law Foundation has not offered any basis for this court to infer that the Legislature understands the CPRA to impose a preservation requirement.

4. *Constitutional mandate*

Consideration of the constitutional provision calling for a broad construction of the CPRA "if it furthers the people's right of access" does not compel a different conclusion. (Cal. Const., art. I, § 3, subd. (b)(2).) "To the extent legislative intent is ambiguous, this [constitutional] provision requires us either to broadly or to narrowly construe the Public Records Act, whichever way will further the people's right of access. [Citation.] But this rule of construction does not require the courts to resolve every conceivable textual ambiguity in favor of greater access, no matter how implausible that result in light of all the relevant indicia of statutory meaning." (*Ardon, supra,* 62 Cal.4th at p. 1190.)

5. *Case law*

Finally, the Law Foundation relies on *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733 (*Golden Door*) to support its argument that a duty to preserve records should be implied from the judicial oversight provisions of the CPRA. We conclude that *Golden Door* is distinguishable.

In *Golden Door*, the Court of Appeal interpreted Public Resources Code section 21167.6, part of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.). Public Resources Code section 21167.6 specifies that "[a]t the time that [a CEQA] action or proceeding is filed, the plaintiff or petitioner shall file a request that the respondent public agency prepare the record of proceedings relating to the subject of the action or proceeding." (Pub. Resources Code, § 21167.6, subd. (a).) Public Resources Code section 21167.6 also specifies the contents of such a "record of proceedings," enumerating 11 different types of documents that must be

included in the record. (See *id.*, subd. (e).) The question before the *Golden Door* court was whether "by mandating the contents of the record of proceedings, [Public Resources Code] section 21167.6 necessarily requires that such writings not be destroyed before the record is prepared." (*Golden Door, supra,* 53 Cal.App.5th at p. 762.) The court answered that question in the affirmative, holding that "a lead agency may not destroy, but rather must retain writings [Public Resources Code] section 21167.6 mandates for inclusion in the record of proceedings." (*Id.* at p. 764.)

The Law Foundation cites *Golden Door* as an instance in which a court found that "a duty to preserve may be implied even if the statute does not expressly provide for retaining records." But the CEQA section addressed in *Golden Door* differs from the CPRA provisions at issue here. The code section involved in *Golden Door* requires an agency to prepare a particular type of record (the record of proceedings) "[a]t the time that" the agency is sued under CEQA. (Pub. Resources Code, § 21167.6, subd. (a).) Public Resources Code section 21167.6 makes clear what written materials are part of this record of proceedings, divesting the agency (and court) of any discretion to exclude materials expressly required. (*Golden Door, supra,* 53 Cal.App.5th at pp. 762–764.) This specific direction regarding what must be contained in the record of proceedings made it reasonable for the *Golden Door* court to conclude that the Legislature wanted these materials to be retained even ahead of any litigation. The CPRA, by contrast, lacks any comparable direction.

Moreover, in holding that Public Resources Code section 21167.6 "requires the lead agency to retain [the] writings" that make up the "record of proceedings," the Court of Appeal relied

41

on the fact that "[p]reparing a record under [Public Resources Code] section 21167.6 is not an end in itself, but rather the means for judicial review of CEQA determinations." (*Golden Door, supra,* 53 Cal.App.5th at p. 747.) Accordingly, "[a] thorough record is fundamental to meaningful judicial review." (*Ibid.*) The court also emphasized that the burden of retention is not overly onerous, as "CEQA contains short limitations periods." (*Id.* at p. 779; see *ibid.* ["an action alleging that an EIR does not comply with CEQA must be filed within 30 days after the agency files a notice of determination. [Citation.] If no notice of determination is filed, the action must be filed within 180 days after the agency approves the project"].)

Neither of these considerations is present in the context of CPRA litigation. Unlike the "record of proceedings" of Public Resources Code section 21167.6, CPRA records are "an end in [themselves]" and not just "the means for judicial review of [statutory] determinations." (*Golden Door, supra,* 53 Cal.App.5th at p. 747.) Moreover, in contrast to the brief limitation periods under CEQA, the Law Foundation urges us to adopt a retention period of at least three years (that begins when an agency invokes a statutory exemption). And notably, the legislative history of CEQA does not contain any statement of the type found here indicating that the statute was intended to leave unaffected rules governing records destruction or retention. (4 Assem. J., *supra,* p. 7150.)

In light of these differences, the fact that the court in *Golden Door* found that a retention duty was implied by the specific text of a provision of the Public Resources Code provides

little ground for us to conclude that different provisions of the CPRA likewise impose a preservation requirement.[20]

## III. DISPOSITION

The Court of Appeal correctly held that the CPRA does not "impose a duty upon public agencies to preserve for three years all documents responsive to a public records request that have been withheld as exempt." (*City of Gilroy, supra*, 96 Cal.App.5th at p. 838.)  No such duty exists.  We reverse the judgment of the Court of Appeal, however, insofar as it unduly limited the scope of declaratory relief available under the CPRA, and we remand the case to the Court of Appeal for further proceedings consistent with this opinion.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**STRATTON, J.**[*]

---

**20**   In concluding that the CPRA does not require the preservation of records in this case, we have considered circumstances where records are destroyed in connection with the normal adoption, implementation, and operation of routine records retention practices and policies.  We have no occasion to address intentional destruction of records in other contexts that may reflect some type of deliberate misconduct.

**\***   Presiding Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CITY OF GILROY v. SUPERIOR COURT

S282937


Concurring Opinion by Justice Groban


I agree with the majority's holding that declaratory relief is available under the California Public Records Act (CPRA) (Gov. Code, § 7920.000 et seq.) where the declaration would resolve an ongoing dispute regarding the parties' rights. (Maj. opn., *ante*, at p. 2.) I also appreciate the majority's conclusion that, for the purpose of deciding the present dispute, we need not "delineate all circumstances in which declaratory relief may be available under the CPRA." (Maj. opn., *ante*, at p. 15.) I write separately to elaborate on the circumstances that, in my view, would — and would not — warrant declaratory relief under the CPRA.

The linchpin of the majority's holding is its statement that, "[a]t a minimum, declaratory relief is available under the CPRA where the declaration would resolve an ongoing dispute regarding the parties' rights and obligations in a manner *that has some likelihood of affecting future requests for public records or future conduct relating to such requests.*" (Maj. opn., *ante*, at p. 2, italics added.) Declaratory relief under the CPRA should be understood to carry the same meaning and scope that courts have long attributed to the general declaratory relief statute, Code of Civil Procedure section 1060. As courts have long concluded, " '[d]eclaratory procedure operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short,

1

the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' " (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.) Consistent with this understanding, the CPRA does not authorize declaratory relief for the sole purpose of declaring that an agency's past conduct violated the CPRA where there is no evidence of a pattern or practice of violations or where the agency does not dispute its legal obligations under the CPRA.

The accepted understanding of declaratory relief, at least as provided by Code of Civil Procedure section 1060, is that it "advance[s] preventive justice" and "declare[s] rather than execute[s] rights." (*Kirkwood v. California State Automobile Assn. Inter-Ins. Bureau* (2011) 193 Cal.App.4th 49, 59.) It "serves a practical purpose in stabilizing an uncertain or disputed legal relation, thereby defusing doubts which might otherwise lead to subsequent litigation." (*Ibid.*) Declaratory relief is generally not proper where a party wishes to declare only that the other party's past conduct breached a contractual or legal obligation. (*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 366.) It is similarly improper where an act by the counterparty deprives the claim of a present controversy, such as where the counterparty voluntarily ceases the allegedly wrongful conduct prior to the lawsuit. (*TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 152 (*TransparentGov*).) An exception to this general rule exists where "there is a reasonable expectation the allegedly wrongful conduct will be repeated," such as where the counterparty continues to assert that its past conduct was lawful or has a pattern and practice of violating the law. (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1157 (*Center for Local*

*Government Accountability*); accord, *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024, 1030.)

To illustrate, in *Center for Local Government Accountability*, the court held that the plaintiff's claim for declaratory relief for a city's past Brown Act violations was not moot where the city continued to assert that its past conduct did not violate the law. (*Center for Local Government Accountability*, *supra*, 247 Cal.App.4th at p. 1157.) By contrast, the court in *TransparentGov* held that declaratory relief was not proper where, prior to the litigation, the city had adopted several remedial measures in response to the plaintiff's letter complaining of past Brown Act violations. (*TransparentGov*, *supra*, 34 Cal.App.5th at pp. 145–146.) The court explained that "resolving whether the discussions that took place at [a past] meeting violated the Brown Act is unnecessary to guide any future behavior that is realistically likely to occur." (*Id.* at pp. 152–153.)

Here, Law Foundation of Silicon Valley is not, of course, seeking declaratory relief under Code of Civil Procedure section 1060, but instead relies upon section 7923.000 of the CPRA. Nevertheless, if the Legislature had intended declaratory relief under the CPRA to depart from its usual prospective function — by authorizing declarations that a party's past, nonrecurring conduct violated the CPRA — I would expect a more explicit expression of that intent in the statute's text or legislative history. The need for an express desire to deviate from our default rule is especially crucial given that, "if a person initiates a proceeding under the [CPRA], he or she *must* be awarded attorney fees and costs if he or she prevails," whereas "in a declaratory relief action [under Code of Civil Procedure section

1060], a member of the public seeking disclosure *cannot* recover attorney fees if he or she prevails." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 429, italics added.) Since attorney's fees are mandatory under the CPRA when a party prevails in a declaratory relief action, we should be certain that the Legislature intended to make it *easier* to prevail in CPRA declaratory relief actions. The Legislature expressed no such intent.

The CPRA provides that "[a]ny person may institute a proceeding for injunctive or declarative relief, or for a writ of mandate, in any court of competent jurisdiction, to enforce that person's right under this division to inspect or receive a copy of any public record or class of public records." (Gov. Code, § 7923.000.) As the majority explains (maj. opn., *ante*, at p. 17), the word "enforce" is defined as "[t]o put into execution," "to cause to take effect," "to make effective," or "to compel obedience to." (Black's Law Dict. (4th ed. 1968) p. 621, col. 2; accord Webster's New Internat. Dict. (3d ed. 1961) p. 751, col. 2 [defining "enforce" as to "compel" or "cause to take effect"]; *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 347 [relying on dictionary definition of " 'enforce' " as meaning " to 'give effect to' "].) The word "enforce" therefore has a "coercive connotation[]" and is forward-looking in that it forces a party to do something it refuses to do. (*Comite De Padres De Familia v. Honig* (1987) 192 Cal.App.3d 528, 532.) Given this language, and consistent with the majority's interpretation, my view is that declaratory relief is available under the CPRA where an agency *continues to contest* a person's legal "right . . . to inspect or receive" certain records (Gov. Code, § 7923.000), even if it has already destroyed or voluntarily produced the records. (See *Center for Local Government*

*Accountability*, *supra*, 247 Cal.App.4th at p. 1157 [city's change in practices did not moot claim for declaratory relief because city continued to assert that its past practices did not violate the Brown Act]; *Cook v. Craig* (1976) 55 Cal.App.3d 773, 780 [declaratory relief under the CPRA was warranted since the defendant, though it produced its complaint investigation procedures, continued to deny any legal obligation to do so].) In addition, and again consistent with the majority's holding, declaratory relief is available under the CPRA where the agency has a pattern and practice of impeding a requestor's right to public records, such as where an agency repeatedly refuses or delays access to requested documents in a manner that is detrimental to the requestor. (See *Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1422 [declaratory relief appropriate "when it is alleged that the agency has a policy of ignoring or violating applicable laws and regulations"]; *Payne Enterprises, Inc. v. U.S.* (D.C. Cir. 1988) 837 F.2d 486, 491 [declaratory relief proper under the federal Freedom of Information Act because the agency had a policy and practice of delaying the release of the requested records].) Under either scenario, declaratory relief is appropriate because, absent such relief, the agency is likely to repeat the unlawful practice in the future.

Applying my interpretation to the facts of this case, I would find, as does the majority, that the first two aspects of the trial court's declaratory relief — declaring that the City violated the CPRA by conducting an inadequate search for records and that the City breached various duties in asserting an exemption for bodycam footage — were proper under the CPRA because they resolved *contested* legal rights and obligations of the parties. (Maj. opn., *ante*, at pp. 18–19.) Throughout the

5

litigation, the City continued to assert that *all* bodycam footage was exempt from production. It is therefore likely that the City, and perhaps other agencies as well, would assert blanket exemptions covering the production of bodycam footage in the future, absent declaratory relief.

I conclude, however, that the CPRA does not entitle a party to declaratory relief where the relief sought is not likely to affect future requests for public records or future conduct relating to such requests. Permitting such broad relief could improperly incentivize members of the public to seek declaratory relief not for the purpose of addressing an actual harm, but merely to obtain attorney's fees. Such an unbounded rule could also discourage agencies from reconsidering their initial legal positions regarding the public's right to the requested records, because agencies might remain liable for attorney's fees even if they voluntarily produce all documents before litigation. Declaratory relief should not be used to resolve moot issues. Rather, such relief must declare a legal right or obligation capable of affecting future requests for records under the CPRA.

**GROBAN, J.**

**We Concur:**
**CORRIGAN, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  City of Gilroy v. Superior Court

---

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 96 Cal.App.5th 818
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion Nos.** S282937, S282950
**Date Filed:**  January 15, 2026

---

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Nahal Iravani-Sani

---

**Counsel:**

Law Offices of William D. Ross, William D. Ross, David Paul Schwarz, Kypros Gabriel Hostetter; Berliner Cohen, Andrew L. Faber, Jolie Houston and Thomas P. Murphy for Petitioner and Real Party in Interest City of Gilroy.

Donald A. Larkin, City Attorney (Morgan Hill), for the League of California Cities and the California Special Districts Association as Amici Curiae on behalf of Petitioner and Real Party in Interest City of Gilroy.

Jennifer Bacon Henning for the California State Association of Counties as Amicus Curiae on behalf of Petitioner and Real Party in Interest City of Gilroy.

Goodwin Procter, Indra Neel Chatterjee, Monte Cooper, Megan D. Bettles, Wendell Lin, Faraz Behnamjou; Disability Rights Advocates, Thomas Zito, Brian Nichols, Hai Dao, Karen Elizabeth Kontz; and

Tristia Bauman for Petitioner and Real Party in Interest Law Foundation of Silicon Valley.

Claudia Center and Erin Neff for Disability Rights Education and Defense Fund, Asian Americans Advancing Justice Southern California, Bay Area Legal Aid, California Advocates for Nursing Home Reform, California Rural Legal Assistance, Centro Legal de la Raza, Child Care Law Center, Community Legal Aid SoCal, Disability Rights California, Eviction Defense Collaborative, Family Violence Appellate Project, Impact Fund, Justice in Aging, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, La Raza Centro Legal, Legal Aid Association of California, Legal Aid Foundation of Los Angeles, Legal Aid of Marin, The Legal Aid Society of San Diego, Legal Aid of Sonoma County, Legal Services of Northern California, The National Health Law Program, The National Homeless Law Center, The National Housing Law Project, OneJustice, Public Interest Law Project, Public Counsel, Senior Advocacy Network, Western Center on Law and Poverty, UnCommon Law and Youth Law Center as Amici Curiae on behalf of Petitioner and Real Party in Interest Law Foundation of Silicon Valley.

Cannata, O'Toole & Olson, Aaron R. Field, Zachary E. Colbeth; David Loy and Annie Cappetta for First Amendment Coalition, LA Times Communications LLC, The McClatchy Company LLC, California Newspapers Partnership, Californians Aware, Electronic Frontier Foundation, Freedom of the Press Foundation, Society of Professional Journalists and Reporters Committee for Freedom of the Press as Amici Curiae on behalf of Petitioner and Real Party in Interest Law Foundation of Silicon Valley.

No appearance for Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Andrew L. Faber
Berliner Cohen LLP
10 Almaden Boulevard, 11th Floor
San Jose, CA 95113
(408) 286-5800

Indra Neel Chatterjee
Goodwin Procter LLP
245 Lytton Avenue, Suite 150
Palo Alto, CA 94301
(650) 422-6708